AO 91 (Rev. 02/09) Criminal Complaint

# United States District Court

### for the
### Western District of New York

**United States of America**

v.

Case No. 23-MJ-4112

**NAMON BROWN a/k/a Bo a/k/a Big Baby,**
**ANTHONY MARTIN a/k/a Dut,**
**JOSE ENCARNACION a/k/a Papi**
**PEDRO MARTINEZ,**
**ADAM BOWEN,**
**DELARAE SHEFFIELD a/k/a Del, and**
**AANIYAH CARTER a/k/a Vee Vee,**
*Defendants*

### CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about and between the month of October 2022 and June 22, 2023, in the Western District of New York, and elsewhere, NAMON BROWN, ANTHONY MARTIN, JOSE ENCARNACION, PEDRO MARTINEZ, ADAM BOWEN, DELARAE SHEFFIELD, AANIYAH CARTER, and others known and unknown, did combine, conspire and agree to possess with intent to distribute, and to distribute, at least 500 grams of cocaine, a Schedule II controlled substance, and fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B) and 841(b)(1)(C), all in violation of Title 21, United States Code, Section 846.

This Criminal Complaint is based on these facts:

☒　Continued on the attached Affidavit.

_____
*Complainant's signature*

MATTHEW D. HUDSON, Special Agent
Homeland Security Investigations
*Printed name and title*

Application submitted electronically by email in .pdf format.
Oath administered, and contents and signature attested to me and before me as true and accurate by telephone pursuant to Fed.R.Crim.P. 4.1 and 4(d) on:

Date: July 17, 2023

_____
*Judge's signature*

HONORABLE MARIAN W. PAYSON
United States Magistrate Judge, WDNY
*Printed name and title*

City and State: Rochester, New York

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

              v.                            23-MJ- 4112

NAMON BROWN a/k/a Bo a/k/a Big Baby,
ANTHONY MARTIN a/k/a Dut,
JOSE ENCARNACION a/k/a Papi,
PEDRO MARTINEZ,
ADAM BOWEN,
DELARAE SHEFFIELD a/k/a Del,
AANIYAH CARTER a/k/a Vee Vee,

           Defendants.

_____

STATE OF NEW YORK   )
COUNTY OF MONROE   )
CITY OF ROCHESTER   )

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

Matthew D. Hudson, being duly sworn, deposes and states:

1.     I am a Special Agent with the Department of Homeland Security (DHS), Homeland Security Investigations (HSI), and have been so employed since November 2019. I am currently assigned to the HSI Buffalo Border Enforcement Security Task Force (BEST) and attached to the Greater Rochester Area Narcotics Enforcement Team (GRANET). My responsibilities include investigating violations of federal and state criminal laws, including crimes involving smuggling and narcotics trafficking. As such, I am an "investigative or law enforcement officer" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516, and Title 21 of the United States Code.

1

2.     This Affidavit is submitted in support of a Criminal Complaint charging Namon BROWN a/k/a Bo a/k/a Big Baby, Anthony MARTIN a/k/a Dut, Jose ENCARNACION a/k/a Papi, Pedro MARTINEZ, Adam BOWEN, Delarae SHEFFIELD a/k/a Del, Aaniyah CARTER a/k/a Vee Vee, and with a violation of Title 21, United States Code, Section 846 (conspiracy to possess with intent to distribute, and distribute, 500 grams or more of a mixture and substance containing cocaine, a Schedule II controlled substance, and fentanyl, a schedule II controlled substance).

3.     As more fully described below, the facts in this Affidavit are based on a combination of my personal participation in this investigation, my review of police reports filed in connection with this investigation, conversations with other law enforcement officers involved in this investigation, and my review of conversations that have been intercepted pursuant to court-authorized eavesdropping warrants. The conclusions drawn in this Affidavit are based on my training and experience as well as the advice of other experienced federal, state and local narcotics investigators. Since this Affidavit is being submitted for a limited purpose, I have not included every fact that I know concerning this investigation. Rather, I have set forth only those facts that relate to the issue of whether probable cause exists to believe that the above-named defendants committed the above-described offenses. In support thereof, I respectfully state the following:

## AFFIANT'S BACKGROUND

4.     I have been employed as an HSI Special Agent since November 2019. During my tenure with HSI, I have participated in numerous narcotics investigations during which I have conducted physical and wire surveillance, executed search warrants, and reviewed and analyzed recorded conversations and records of drug traffickers. Through my training,

education, and experience, I have become familiar with the manner in which illegal drugs (including cocaine, fentanyl, and others) are imported, stored, transported, and distributed, as well as methods of payment for such drugs. I am also familiar with the manner in which proceeds from narcotics trafficking are laundered, and the efforts and strategies drug traffickers will employ to avoid detection by law enforcement. I am aware of the fact that those who distribute controlled substances often use cryptic, coded or otherwise indirect language when discussing their illegal activities over the telephone. I am also aware of the fact that drug traffickers will often add adulterants or other additives to their controlled substances to increase the quantity of their distributable product, thereby increasing their profits. I know that drug traffickers often use firearms in order to protect themselves, their narcotics and drug proceeds from rival drug traffickers and/or potential robbers. Therefore, drug traffickers frequently are in possession of firearms for these purposes.

## BACKGROUND OF INVESTIGATION

5.     The Greater Rochester Area Narcotics Enforcement Team (hereafter "GRANET") and other cooperating law enforcement agencies have been investigating a drug trafficking organization led by Namon BROWN (hereafter the "BROWN DTO"). The investigation has used various investigative techniques, including confidential informants, audio recorded purchases of cocaine and fentanyl, surveillance (by both plain clothes officers as well as covert cameras), search warrants and state eavesdropping warrants that were used to monitor and record conversations between members of the BROWN DTO and others in contact with members of the BROWN DTO, and to obtain GPS tracking information.

6.     Members of the BROWN DTO were using cellular phones to facilitate their drug trafficking activities. Over the course of this investigation, numerous eavesdropping warrants were obtained for telephone numbers used by members of the BROWN DTO. All of the intercepted telephone calls, text messages, and corresponding location/ping data referred to in this Affidavit were obtained through lawful eavesdropping warrants, issued by the Honorable Charles J. Schiano Jr., Monroe County Supreme Court Judge, on various dates over the course of this investigation.

7.     Based on my training and experience, drug dealers and traffickers will frequently use multiple cellular phones and will regularly drop or change telephone numbers in an effort to evade law enforcement. For example, Namon BROWN used at least five different telephone numbers over the course of this investigation. Often drug dealers will use telephone numbers that have services subscribed to in the name of another individual, are subscribed to fictitious persons, or have no subscriber information at all. The users of the telephone numbers described throughout this Affidavit have been identified by various means, including but not limited to, the personal knowledge and observations of your affiant and that which was conveyed to me by officers on surveillance; information provided by reliable confidential sources; vehicle stops of targets; video footage, Department of Motor Vehicle driver's license and automobile registration records; and the names and nicknames used by interceptees to address one another during intercepted telephone conversations. As this was a long-term investigation, members of the investigative team also became increasingly familiar with the sound of each target's voice as the case proceeded.

## OVERVIEW OF CONSPIRACY

8.    The investigation has revealed that since at least October 2022, the BROWN DTO distributed large quantities of cocaine and fentanyl in the Rochester, New York area. Additionally, the investigation has revealed that BROWN supplies several drug traffickers who distribute narcotics on his behalf in the Auburn, New York area. To summarize, the BROWN DTO is led by Namon BROWN, who resided at 72 Lake Vista Court, Apartment B, Rochester, New York and 280 East Broad Street, Apartment 901, Rochester, New York over the course of the conspiracy. Based on the totality of the investigation, as well as my training and experience, your Affiant believes BROWN would obtain bulk quantities of cocaine and fentanyl, which he then used to supply several "gate" or "trap" houses[1], which were operated at his direction by lower-level members of the BROWN DTO. Based on the investigation to date, as well as my training and experience, your Affiant also believes BROWN used different locations as "stash" houses, that is, a location to store large quantities of bulk or packaged controlled substances, or United States currency. Identified below are some of the locations under the control of the BROWN DTO over the course of the conspiracy and brief descriptions of how each location was used in furtherance of the narcotics conspiracy:

> a.  **79 Bloss Street, Rochester, New York:** This location was used by the BROWN DTO as a gate/trap house to sell controlled substances to individual drug users.
>
> b.  **507 Emerson Street, Rochester, New York:** This location was used by the BROWN DTO as a gate/trap house to sell controlled substances to individual drug users.
>
> c.  **55 Murray Street, Rochester, New York:** This location was used by the BROWN DTO as a gate/trap house to sell controlled

---

[1] A "gate house" or "trap house" is a commonly used term to describe a location that drug users can purchase controlled substances from members of a drug trafficking organization.

substances to individual drug users.

d. **72 Lake Vista Court Apartment B, Rochester, New York:** This location is one of two locations that BROWN most frequently resided at during the course of the conspiracy.

e. **280 East Broad Street, Apartment 901, Rochester, New York:** This location is one of two locations that BROWN most frequently resided at during the course of the conspiracy.

f. **491 Jay Street, Rochester, New York:** This location was used by the BROWN DTO as a gate/trap house to sell controlled substances to individual drug users.

g. **28 Washington Street, Auburn, New York:** This was a distribution location in Auburn supplied by Namon BROWN.

h. **11 Chapman Avenue, Auburn, New York:** This was a distribution location in Auburn supplied by Namon BROWN and the primary residence of M.S. and Delarae SHEFFIELD. Cocaine base was also cooked or prepared at this location.

9.      BROWN's DTO is composed of a number of individuals who fulfill various roles in furtherance of his narcotics trafficking operation. BROWN would obtain bulk quantities of cocaine, which would then be broken-down into individual units and packaged for street sale by BROWN and members of the BROWN DTO. Members of the BROWN DTO also staff the distribution locations where cocaine and fentanyl was sold to individual drug users.  BROWN's upper-level workers in Auburn, New York are believed to include Delarae SHEFFIELD a/k/a Del, and Aaniyah CARTER a/k/a Vee Vee, among others. For approximately seven months leading up to the arrest of Namon BROWN, law enforcement used covert cameras directed at various locations pertinent to the investigation, including: 79 Bloss Street, 28 Washington Street, 5 Parsons Street, 507 Emerson Street, 55 Murray Street, and 491 Jay Street, among others. Based on my training, experience, and conversations with other experienced narcotics investigators, your Affiant has observed foot traffic and vehicle traffic that is consistent with numerous drug transactions each day between these locations.  Your Affiant also believes BROWN supplies bulk

quantities of cocaine to other drug dealers who then further distributed the substances.

10.     The investigation has also revealed several sources of bulk controlled substances utilized by Namon BROWN and the BROWN DTO. These individuals include co-conspirators: Anthony MARTIN, Jose ENCARNACION, Pedro MARTINEZ, and individuals identified by their initials, including J.O. Certain pertinent locations associated with these co-conspirators are summarized below:

> a.  **1408 Lake Avenue, Rochester, New York:** This address was used by Anthony MARTIN as a stash location for bulk controlled substances.
>
> b.  **1 Antoinette Drive, Apartment 1, Rochester, New York:** This location was used by Anthony MARTIN as a stash location for bulk currency.
>
> c.  **548 Wintergreen Way, Brighton, New York:** This address was used by Anthony MARTIN as both a residence and a stash location for bulk U.S. currency.
>
> d.  **185 Joseph Avenue, Rochester, New York:** This was a residence of J.O. and Jose ENCARNACION. I also believe that J.O. and ENCARNACION conducted drug transactions at or near this location, based on surveillance observations.
>
> e.  **103 Thompson Road, Henrietta, New York:** This was the residence of Pedro MARTINEZ.

## CONTROLLED BUYS

11.     Between November of 2022 and June 2023, the investigative team conducted a number of controlled-buy operations from the BROWN DTO utilizing two confidential sources, hereafter referred to as CS-1 and CS-2.

12.     CS-1 has been a confidential source for approximately 29 years. Your Affiant knows CS-1's information to be truthful, reliable, and credible. Information provided by CS-1

has led to numerous successful seizures of narcotics and criminal arrests. Additionally, the information that CS-1 has provided in the past has been fully corroborated. CS-2 has been a confidential source for approximately four years. Your Affiant knows CS-2's information to be truthful, reliable, and credible. Information provided by CS-2 has led to several successful seizures of narcotics and criminal arrests. Additionally, the information CS-2 has provided in the past has been corroborated. Additionally, information provided by CS-1 and CS-2 as it relates to this investigation was often corroborated by law enforcement surveillance.

13.     Prior to each controlled-buy, CS-1 or CS-2 would be searched for drugs, money, and contraband, which always returned negative results. During each controlled-buy, visual surveillance was conducted by officers who could observe CS-1 or CS-2 walking to and from the target location for the controlled-buy. CS-1 and CS-2 were provided with official law enforcement funds to purchase narcotics prior to each controlled-buy operation. After each controlled-buy, members of the law enforcement team would follow CS-1 or CS-2 from the target location to a predetermined meeting area where CS-1 or CS-2 would turn over the purchased cocaine and/or fentanyl, and thereafter be debriefed. After each controlled-buy, the controlled substance was field tested by a properly trained law enforcement officer. The field tests conducted in each of the controlled-buy operations enumerated below all returned positive results for the presence of cocaine or fentanyl, depending on what had been purchased during the particular controlled buy.  What follows are brief descriptions of the controlled-buy operations in which cocaine and/or fentanyl was successfully purchased from a member of the BROWN DTO out of 79 Bloss Street, Rochester, New York, 507 Emerson Street, Rochester, New York, or 55 Murray Street, Rochester, New York over the course of this investigation.

14.     **During the 2nd full week of February 2023**, at the direction of law enforcement, CS-1 conducted a controlled purchase of cocaine from 79 Bloss Street in

8

Rochester, New York. CS-1 went to the back window of 79 Bloss Street. After ringing a bell next to the window, an unknown black male came to the window. CS-1 had a brief conversation with the unknown male about purchasing cocaine and handed the unknown male a quantity of U.S. currency. In exchange, the unknown male handed CS-1 three yellow-topped vials containing a quantity of white, rock-like substance that appeared to be cocaine. A short time later, CS-1 left the location and returned to the undercover vehicle. CS-1 then turned over a quantity of white, rock-like substance to the undercover officers monitoring the operation, that appeared to be cocaine base. The substance later field tested positive for the presence of cocaine. Approximately one day prior to the above-referenced controlled purchase, members of the surveillance team observed Namon BROWN's Ram pickup truck, bearing New York license plate KBU3006, parked in the rear driveway of 79 Bloss Street.

15.    **During the 1ˢᵗ full week of March 2023**, at the direction of law enforcement, CS-1 conducted a controlled purchase of cocaine from 507 Emerson Street in Rochester, New York. CS-1 went to the back door of 507 Emerson Street After ringing the doorbell on the back door, an unknown black male came to the door and opened a flap. CS-1 had a brief conversation with the unknown male about purchasing cocaine and handed the unknown male a quantity of U.S. currency. In exchange, the unknown male handed CS-1 two yellow-tinted vials containing a quantity of white, rock-like substance that appeared to be cocaine base. A short time later, CS-1 left the location and returned to the undercover and returned to the undercover vehicle. CS-1 then turned over a quantity of white, rock-like substance to the undercover officers monitoring the operation, that appeared to be cocaine base. The substance later field tested positive for the presence of cocaine.

16.    **During the 2ⁿᵈ full week of March 2023**, at the direction of law enforcement, CS-1 conducted a controlled purchase of cocaine from 507 Emerson Street in Rochester, New

York. CS-1 went to the back door of 507 Emerson Street After ringing the doorbell on the back door, an unknown black male came to the door and opened a flap. CS-1 had a brief conversation with the unknown black male about purchasing cocaine base and handed the unknown male a quantity of U.S. currency. In exchange, the unknown male handed CS-1 two yellow-topped vials containing a quantity of white, rock-like substance that appeared to be cocaine base. A short time later, CS-1 left the location and returned to the undercover vehicle. CS-1 then turned over a quantity of white, rock-like substance to the undercover officers monitoring the operation, that appeared to be cocaine base. The substance later field tested positive for the presence of cocaine.

17.    **During the 2nd full week of March 2023**, at the direction of law enforcement, CS-1 conducted a controlled purchase of cocaine from 507 Emerson Street in Rochester, New York. CS-1 went to the back door of 507 Emerson Street after ringing the doorbell on the back door, an unknown black male came to the door and opened a flap. CS-1 had a brief conversation with the unknown black male about purchasing cocaine base and handed the unknown male a quantity of U.S. currency. In exchange, the unknown male handed CS-1 two yellow-topped vials containing a quantity of white, rock-like substance that appeared to be cocaine base. CS-1 also observed Namon BROWN inside 507 Emerson Street at the time of the controlled purchase. A short time later, CS-1 left the location and returned to the undercover vehicle. CS-1 then turned over a quantity of white, rock-like substance to the undercover officers monitoring the operation, that appeared to be cocaine base. The substance later field tested positive for the presence of cocaine.

18.    **During the 3rd full week of March 2023**, at the direction of law enforcement, CS-1 conducted a controlled purchase of cocaine base from 55 Murray Street in Rochester, New York. CS-1 went to the front door of 55 Murray Street where an unidentified female

instructed CS-1 to go to the back of the residence. CS-1 walked to the back of 55 Murray Street and rang a doorbell located next to the rear window. CS-1 had a brief conversation with an unknown individual about purchasing a quantity of cocaine base and handed the unknown individual a quantity of U.S. currency. In exchange, the unidentified individual handed CS-1 one yellow-tinted vial containing a quantity of white, rock-like substance that appeared to be cocaine base. A short time later, CS-1 left the location and returned to the undercover vehicle. CS-1 then turned over a quantity of white, rock-like substance to the undercover officers monitoring the operation, that appeared to be cocaine base. The substance later field tested positive for the presence of cocaine. Approximately one day prior to the above-referenced controlled purchase, members of the surveillance team observed Namon BROWN's white-colored Dodge Durango, bearing Florida license plate DZXR49, parked in the area of 55 Murray Street. During this surveillance operation (on the day before the controlled-buy), surveillance members observed an unidentified black male, wearing all black-colored clothing, exit 55 Murray Street and approach BROWN's Dodge Durango. The unidentified male appeared to retrieve something from inside the Dodge Durango before reentering 55 Murray Street

19.     **During the 4th full week of March 2023**, at the direction of law enforcement, CS-1 conducted a controlled purchase of cocaine base and fentanyl from 55 Murray Street in Rochester, New York. CS-1 went to the back of 55 Murray Street and rang a doorbell located next to the rear window. CS-1 had a brief conversation with an unknown black male about purchasing cocaine base and fentanyl and handed the unknown male a quantity of U.S. currency. In exchange, the unknown male handed CS-1 two yellow-tinted vials containing a quantity of white, rock-like substance that appeared to be cocaine base and two clear-colored vials containing a white, powdery substance that appeared to be fentanyl. A short time later,

CS-1 left the location and returned to the undercover vehicle. CS-1 then turned over a quantity of white, rock-like substance that appeared to be cocaine base and a quantity of white, powdery substance that appeared to be fentanyl to the undercover officers monitoring the operation. The substances later field tested positive for the presence of cocaine and fentanyl respectively.

20.    **During the 3rd full week of April 2023**, at the direction of law enforcement, CS-1 conducted a controlled purchase of cocaine base and fentanyl from 55 Murray Street in Rochester, New York. Prior to the controlled purchase, surveillance team members, utilizing video surveillance and GPS vehicle tracking information, observed Namon BROWN arrive at 55 Murray Street in a white-colored Dodge Durango bearing Florida license plate number DZXR49. A short time later, CS-1 walked to the back of Murray Street and rang a doorbell located next to the rear window. CS-1 had a brief conversation with an unknown individual about purchasing a quantity of cocaine and fentanyl and handed the unknown individual a quantity of U.S. currency. In exchange, the unidentified individual handed CS-1 eight brown-colored wax envelopes containing a white, powdery substance that appeared to be fentanyl and two yellow-tinted vials containing a white, rock-like substance that appeared to be cocaine base. A short time later, CS-1 returned to the undercover vehicle. CS-1 then turned over a quantity of white, powdery substance and a quantity of white, rock-like substance to the undercover officers monitoring the operation. The substances later tested positive for the presence of cocaine and fentanyl respectively.

## INTERCEPTED CALLS AND SURVEILLANCE RELATING TO THE BROWN DTO

21.    As indicated above, throughout this investigation a number of eavesdropping warrants were issued by the Honorable Charles J. Schiano Jr., Monroe County Supreme Court

Judge, for telephone numbers associated with the BROWN DTO. The following paragraphs are transcripts of intercepted calls or texts, or summaries thereof, supplemented by your Affiant's interpretation of these communications. This Affidavit does not present each and every call intercepted between parties, but merely provides relevant examples that are intended to demonstrate the involvement of each party.   Where pertinent, this Affidavit also provides a description of surveillance activity performed in connection with a particular communication. Throughout this investigation, surveillance has been conducted either "in person" by law enforcement agents on the ground or through video surveillance feeds from cameras located in public areas at or near relevant locations in Rochester, New York.

22.    **On November 17, 2022**, at approximately 1:22 p.m., surveillance team members, utilizing a covert camera, observed Namon BROWN arrive at 5 Parsons Street in Auburn, New York, in a white-colored Dodge Charger bearing New York license plate number KVP4973. BROWN exits the Dodge Charger and enters 5 Parsons Street through the front door. At approximately 2:07 p.m., surveillance team members observed BROWN exit 5 Parsons Street, enter the white-colored Dodge Charger, and leave the area. At approximately 2:12 p.m., an incoming call (Ref.# 695) was lawfully intercepted over telephone number (315) 956-8939 utilized by T.H., one of Namon BROWN's distributors in Auburn, New York. In this call, T.H. tells an unidentified female that "Bo just came out here for me but he about to go grab some more… some more, uh, shit." The unidentified female asks T.H., "You got something over there though?", to which T.H. replies, "Yeah, I got some on me right now." T.H. then tells the unidentified female, once again, that Bo is "coming back though to bring, uh, to bring it." Based on my training, experience, and knowledge of this investigation, your Affiant believes that Namon BROWN went to 5 Parsons Street to resupply T.H. with a quantity of narcotics. Your Affiant further believes that T.H. was advising the unidentified female that Namon BROWN will

be resupplying T.H. with a quantity of narcotics again soon.

23.    **On November 18,** 2023, at approximately 11:28 a.m., an incoming call (Ref.# 681) was lawfully intercepted over telephone number (315) 956-8939 utilized by T.H. In this call, an unidentified male tells T.H., "Here I come." Moments later, surveillance team members observed a silver-colored pickup truck, bearing New York license plate number GAU2849, park in front of 5 Parsons Street in Auburn, New York. T.H. is then observed exiting the front door of 5 Parsons Street, approaching the driver's-side door of the pickup, and conducting what your Affiant believes to be a hand-to-hand narcotics transaction before going back inside 5 Parsons Street. At approximately 1:22 p.m., surveillance team members observed Namon BROWN arrive at 5 Parsons Street in Auburn, New York, carrying a satchel. Approximately five minutes after BROWN was observed arriving at 5 Parsons Street, T.H. placed an outgoing call (Ref.# 730) utilizing telephone number (315) 956-8939 to an unidentified male. T.H. informs the unidentified male that they are "good". Minutes later, an unidentified male is observed arriving at 5 Parsons Street on foot. Based on my knowledge of this investigation, your Affiant believes Namon BROWN went to 5 Parsons Street for the purpose of resupplying T.H. with a quantity of narcotics, as mentioned in the conversation referenced in paragraph 22 above.

24.    **On December 15, 2022**, at approximately 2:06 p.m., an outgoing call (Ref.# 1556) was lawfully intercepted over telephone number (315) 612-8215 utilized by Delarae SHEFFIELD to telephone number (585) 746-0700 utilized by J.S. In this call, SHEFFIELD asks J.S., "You at the house?" to which J.S. replies, "Baby in there. Baby should be in there, Del. Baby in the house. I just talked to him." Approximately three minutes after this call, surveillance team members, utilizing a covert pole camera positioned facing the rear entrance of 79 Bloss Street, observed SHEFFIELD arrive at 79 Bloss St in a white-colored Lincoln bearing New York license plate number KTT8576. SHEFFIELD exits the Lincoln and enters 79 Bloss Street. Minutes later,

surveillance team members observed SHEFFIELD leave 79 Bloss Street in the white-colored Lincoln. J.S. was then observed leaving 79 Bloss Street in a dark colored Dodge Challenger bearing New York license plate number JJW3063. At approximately 5:18 p.m., J.S.'s Challenger was observed via covert camera as it arrived at 28 Washington Street in Auburn, New York. Moments later, SHEFFIELD's Lincoln was observed as it arrived at 28 Washington Street. Namon BROWN exited J. S's Dodge Challenger, opens the door to the Lincoln, and appears to have a conversation with SHEFFIELD. A short time later, SHEFFIELD's Lincoln left 28 Washington Street followed by BROWN and J.S. in the Dodge Challenger.

25.    Based on my training, experience, and knowledge of this investigation, your Affiant believes SHEFFIELD (who sells drugs on BROWN's behalf in Auburn) went to 79 Bloss Street to obtain a new supply of narcotics from BROWN and J.S. When BROWN failed to answer the door at 79 Bloss Street, SHEFFIELD called J.S. looking for BROWN. Your Affiant further believes that BROWN, J.S., and SHEFFIELD met at 28 Washington Street to complete the above-referenced narcotics transaction. This investigation has revealed that 28 Washington Street was a narcotics distribution location supplied by BROWN.

26.    **On December 23, 2022**, at approximately 7:10 p.m. an incoming call (Ref.# 3518) was lawfully intercepted over telephone number (315) 612-8215 utilized by Delarae SHEFFIELD from telephone number (585) 474-3083 utilized by D.S. During the call, D.S. tells SHEFFIELD that he "doesn't wanna break into it" and he "just wants to sell it whole" because he needs "the bread."

27.    Based on my training, experience, and knowledge of the investigation, your Affiant believes "break into it" refers to breaking off a smaller portion from a large quantity of narcotics, specifically for distribution. When D.S. says he needs "the bread," your Affiant believes D.S. is referring to illicit proceeds from narcotics sales.  Later in the conversation, D.S.

asks SHEFFIELD, "Do you have a whole one? I'm not breaking into it," to which SHEFFIELD responds, "No, I have a lick. I just have a lick for a ball." Based on my training, experience, and knowledge of the investigation, your Affiant believes D.S. is telling SHEFFIELD that he does not want to break a larger quantity of narcotics down into smaller amounts. Your Affiant further believes that when SHEFFIELD replies to D.S. saying, "I just have a lick for a ball", SHEFFIELD is telling D.S. that she has a customer that is looking to purchase an "8-Ball" or approximately 3.5 grams of powder cocaine. Your Affiant is aware that drug dealers will typically refer to their customers as "licks." Your Affiant is also aware that drug dealers will typically refer to their illicit proceeds as "Bread."

28.    **On December 25, 2022**, at approximately 9:48 a.m., an incoming call (Ref.# 3834) was lawfully intercepted over telephone number (315) 612-8215 utilized by Delarae SHEFFIELD. In this call, an unidentified female asks SHEFFIELD, "When are you going?" to which SHEFFIELD replies, "I'm about to, uh, right now." At approximately 11:16 a.m., SHEFFIELD, utilizing telephone number (315) 612-8215, receives an incoming call (Ref.# 3844) from a separate unidentified female. In this call, SHEFFIELD tells the unidentified female that she is "going to re-up" right now, to which the unidentified female replies, "You're going to Rochester?" At approximately 12:06 p.m., surveillance team members, utilizing a covert pole camera positioned facing the front entrance to 79 Bloss Street, observed Namon BROWN arrive at 79 Bloss Street and enter the residence through the front door. At approximately 12:10 p.m., surveillance team members observed SHEFFIELD arrive with an unidentified male at 79 Bloss Street in Rochester, New York, in a white-colored Lincoln bearing New York license plate number KTT8576. Moments later, SHEFFIELD and the unidentified male are observed entering 79 Bloss Street. At approximately 12:28 p.m., an incoming text message was lawfully intercepted over telephone number (315) 612-8215 utilized by SHEFFIELD. In this message, an unidentified

individual asks SHEFFIELD "Hey u free later. I'm gonna need blow and my shit."

29.    Based on my training, experience, and knowledge of this investigation, your Affiant believes that SHEFFIELD traveled from Auburn, New York to 79 Bloss Street to purchase a quantity of narcotics from Namon BROWN. As indicated above, Sheffield tells the unidentified female that she is going to "re-up." Your Affiant is aware that drug dealers will typically use the term "re-up" when referring to resupplying themselves with quantities of narcotics. Later a text message was sent to SHEFFIELD from an unidentified individual to SHEFFIELD in which they write that they "need blow." Your Affiant is aware that drug dealers and drug users will commonly refer to powder cocaine as "blow." Based on the above referenced telephone calls and text messages, as well as the surveillance observations of SHEFFIELD meeting with BROWN at 79 Bloss Street, your Affiant believes that SHEFFIELD met with BROWN at this time to obtain bulk quantities of cocaine to distribute in Auburn.

30.    **On December 26, 2022**, at approximately 12:48 p.m., an incoming call (Ref.#3857) was lawfully intercepted over telephone number (315) 612-8215 utilized by Delarae SHEFFIELD. In this call, Namon BROWN tells SHEFFIELD, "Yo, B… we got to be smart, bro. You gotta switch these phones around." Seconds later, BROWN tells SHEFFIELD, "Stop fooling. Then you guys seen calling fiends, word?"

31.    Based on my training, experience, and knowledge of this investigation, your Affiant believes that BROWN is instructing SHEFFIELD to switch cellular telephone numbers to avoid possible interception by law enforcement. Your Affiant is aware that drug dealers will change telephone numbers often to evade detection from law enforcement. Based on my training, experience, and knowledge of this investigation, your Affiant further believes that when BROWN used the term "fiends", he is referring to drug addicts or customers of the BROWN DTO. Drug dealers will commonly refer to customers as "licks" or "fiends" as a means of identification.

32.      **On February 1, 2023**, at approximately 1:29 p.m., an incoming text message (Ref.# 182) was lawfully intercepted over telephone number (585) 813-6827 utilized by Namon BROWN. In this message, an unidentified individual writes "Hey Big Baby this tootie is you coming before 4:00 cuz I have to send this up before 40 people just call me in order for them to order the stuff for them to come out next week." Later that day, at approximately 3:00 p.m., surveillance team members observed BROWN enter 79 Bloss Street carrying a yellow-colored bag. At approximately 4:20 p.m., surveillance team members observed BROWN leave 79 Bloss Street in a black-colored Dodge Durango bearing Vermont license plate number KHK440. Moments later, BROWN was observed parking in front of 491 Jay Street. BROWN then exited his vehicle and met with an individual that over the course of this investigation has been identified as "Tootie." This meeting took place in the area between 487 Jay Street and 491 Jay Street

33.      Based on my training, experience, and knowledge of this investigation, your Affiant believes Namon BROWN was delivering a quantity of narcotics to 491 Jay Street. This investigation has revealed 491 Jay Street to be a narcotics distribution location supplied by Namon BROWN. Your Affiant further believes that the yellow-colored bag surveillance team members observed in BROWN's hand prior to entering 79 Bloss Street contained a quantity of narcotics. Your Affiant is aware that drug dealers will typically conceal narcotics and the proceeds of narcotics sales within bags to conceal them from law enforcement surveillance.

34.      **On February 6, 2023**, at approximately 3:13 p.m., surveillance team members observed Anthony MARTIN arrive at 79 Bloss Street in a Chevrolet Silverado pickup truck bearing New York license plate number KAW6554. Moments later, MARTIN and Namon BROWN were observed exiting the rear entrance of 79 Bloss Street and leaving together in MARTIN's Chevrolet Silverado pickup truck. At approximately 3:23 p.m., BROWN and MARTIN were observed arriving at 491 Jay Street. BROWN was then observed as he entered

491 Jay Street and remained inside for approximately two minutes before returning to MARTIN's vehicle and leaving. At approximately 3:28 p.m., MARTIN and BROWN were observed arriving back at 79 Bloss Street. BROWN then exited MARTIN's vehicle and enters 79 Bloss Street while MARTIN left the area.

35.    Based on my training, experience, and knowledge of this investigation, your Affiant believes BROWN and MARTIN are conspiring to distribute narcotics in Rochester, New York. Your Affiant further believes that BROWN and MARTIN likely transported a quantity of narcotics from 79 Bloss Street to 491 Jay Street. As corroborated search warrant results, described later in this affidavit, MARTIN is a bulk supplier of cocaine for BROWN.

36.    **On February 8, 2023**, at approximately 4:40 p.m., surveillance team members observed Namon BROWN arrive at 79 Bloss Street in a Dodge pickup truck bearing New York license plate number KBU3006. Approximately 20 minutes later, surveillance team members observed Anthony MARTIN arrive at 79 Bloss Street in a Chevrolet Silverado pickup truck bearing New York license plate number KAW6554. MARTIN was observed as he got out of his vehicle and approached the rear entrance to 79 Bloss Street. Approximately two minutes later, MARTIN was observed walking back to his pickup truck holding a bag and a yellow-colored container. MARTIN then drove from 79 Bloss Street directly to 1408 Lake Avenue, in Rochester, New York, based on GPS tracker data. When search warrants were executed at 1408 Lake Avenue on June 22, 2023, multiple kilograms of cocaine and a loaded firearm was recovered from 1408 Lake Avenue, which is residence of the mother of MARTIN's girlfriend. Surveillance on MARTIN has revealed a pattern to his daily driving route, which typically begins and ends at 1408 Lake Avenue.

37.     Based on my training, experience, and knowledge of this investigation, your Affiant believes Anthony MARTIN went to 79 Bloss Street for the purpose of procuring narcotics from Namon BROWN or received U.S. currency from BROWN for drugs MARTIN had provided BROWN with earlier. Based on my training and experience, drug traffickers working together will often use each other as supply sources as demand needs from individual customers arise.

38.     **On February 15, 2023**, at approximately 11:51 a.m., an outgoing call (Ref.# 537) was lawfully intercepted over telephone number (585) 813-6827 utilized by Namon BROWN to (585) 300-9431 used by A.P., the contents of which are transcribed below:

**NB:**     **Namon Brown aka "Big Baby"**
**AP:**     *This individual has been identified by law enforcement*

**[Start]**

**AP:**     **Yo!**

**NB:**     **Yo! Bro come over here now! This an emergency, bro!**

**AP:**     **Hello?**

**NB:**     **Yo! Come over here now, bro! It's an emergency!**

**AP:**     **Alright, I'm comin' right now.**

**NB:**     **Like come right now, bro. Like right right right right now, bro!**

**AP:**      **Yeah, I'm coming from Canandaigua. I'm pulling up.**

**NB:**      **You coming from where?**

**AP:**      **What's it say, cool? I'll be there in, like, 30 minutes.**

**NB:**     **Like this shit bad, bro!**

**AP:**     **Alright, I'm pullin' up.**

**NB:**     **This shit crazy, man.**

20

**[End]**

39.     Based on my training, experience, and knowledge of this investigation, in this call, BROWN was directing A.P. to come to BROWN's location at 79 Bloss Street. Surveillance footage from 79 Bloss Street shows that at approximately 12:12 p.m., BROWN arrived at 79 Bloss Street in a dark-colored Ram pickup truck bearing New York license plate number KBU3006. BROWN entered the residence through the rear door and remained inside for approximately 15 minutes. At approximately 12:26 p.m., BROWN and two other unidentified males were observed loading what appears to be a dead body into the back seat of a red-colored Nissan Altima parked against the rear side of 79 Bloss Street. BROWN was observed ending one of the arms of the body in an apparent effort to get it to fit in the back seat of the Altima. Prior to loading the body, BROWN was observed directing the vehicle as these other individuals backed the car in, apparently getting the vehicle into position. At approximately 12:45 p.m., the two unidentified males were then observed leaving 79 Bloss Street in the red-colored Nissan Altima. Surveillance team members immediately dispatched Rochester Police Department marked units to intercept the red-colored Nissan Altima. The driver of the Nissan Altima attempted to evade police, driving at high speed in the City, including driving the wrong direction down a one-way street and colliding with a parked car. Both unidentified males were taken into custody. One of the individuals was a juvenile and was in possession of a loaded firearm, which the individual threw during a foot chase with the police. A New York State authorized search warrant was signed and executed at 79 Bloss Street. A deceased male was found in the back seat of the Altima. The individual did not have any apparent wounds suggesting he was the victim of violence. Used Narcan needles were found in close proximity to the doorway from which the body had been carried out. Individuals that were present inside of 79 Bloss at the time of the incident were interviewed by law enforcement and indicated the male used fentanyl and began to overdose

21

inside of 79 Bloss Street. While the medical examiner has not issued an autopsy report as of this writing, based on my training and experience, and knowledge of the investigation to date, I believe this individual overdosed on fentanyl purchased and used in Namon BROWN's drug house.

40.     Later that day, (February 15, 2023) a search warrant was obtained for 79 Bloss Street. During a search of the location investigators discovered approximately 14 grams of powder fentanyl and several rounds of live 9mm ammunition. BROWN was not at 79 Bloss Street when the warrant was executed. Based on my training, experience, and knowledge of this investigation, your Affiant believes that BROWN supplied 79 Bloss Street with narcotics and oversaw the day-to-day operations of the drug house. Because BROWN stated that he had "an emergency" at 79 Bloss Street, along with the surveillance camera footage of BROWN and others moving an apparently dead body into a vehicle, along with approximately 14 grams of fentanyl found at the residence during the search warrant, your Affiant believes BROWN was attempting to conceal a narcotic overdose at one of his primary drug distribution locations.

41.     **On February 16, 2023**, at approximately 9:34 a.m., an outgoing call (Ref.# 651) was lawfully intercepted over telephone number (585) 683-5291 utilized by Namon BROWN. In this call, BROWN called an unidentified female and said, "This is Bo. This is Dot and Del's boss." The female replied, "Huh?" BROWN then said "I'm their boss. Like, they work for me. I'm their boss."

42.     Based on my training, experience and knowledge of this investigation, your Affiant believes BROWN is telling the unidentified female that he is Delrae SHEFFIELD's and T.H.'s boss, and that SHEFFIELD and T.H. distribute narcotics supplied by BROWN. Calls intercepted over the course of this investigation have revealed that BROWN refers to himself as "Bo" when distributing cocaine in Auburn, New York.

22

43.    **On February 16, 2023**, between approximately 10:59 a.m. and 11:06 a.m., a series of text messages (Ref.#659 - #662) were lawfully intercepted over telephone number (585) 683-5291 utilized by Namon BROWN. In these messages, an unidentified individual asks BROWN, "Hey I'm sorry to bother u. But is Del the only one running out here for ya? I want to get some later today but Dels are always short." BROWN then replies via text "Hell no. I am."

44.    Based on my training, experience, and knowledge of this investigation, your Affiant believes that the unidentified individual is asking BROWN if Delarae SHEFFIELD is the only person in Auburn, New York selling drugs for BROWN. When BROWN responds "Hell no. I am" I believe BROWN is indicating that he is also selling drugs in Auburn, New York.

45.    **On February 16, 2023**, at approximately 1:29 p.m., an incoming call (Ref.# 690) was lawfully intercepted over telephone number (585) 683-5291 utilized by Namon BROWN from telephone number (315) 975-0073 utilized by an unidentified male. In this call, BROWN says, "People still be calling Del. Del rip everybody off." The unidentified male responds, "Yeah… yeah 'cause when you're not around, that's who they call. They ain't got nobody else." Moments later, BROWN says, "I don't like… I don't like when Del goes through my bags and don't give y'all guys what I told her to give y'all."

46.    Based on my training, experience, and knowledge of this investigation, your Affiant believes BROWN is talking about Delarae SHEFFIELD conducting drug sales on BROWN's behalf, but in a manner not to his liking. BROWN indicates that he is unhappy with SHEFFIELD because she is "going through" BROWN's bags. Based on my training, experience, and knowledge of this investigation, your Affiant believes BROWN is referring to SHEFFIELD altering pre-packaged quantities of drugs that BROWN has packaged for street-level distribution. This is evident later in the conversation when BROWN says, "But I cut Del off because I didn't like how she was treating customers and I don't like that. I don't like that side of cheating. And

23

on top of y'all getting cheated, she is altering my bags." BROWN also says, "Yeah, that's what she do. You notice every time I give you something, it's in a bag? I'm giving you as it is." Based on my training, experience, and knowledge of this investigation, your Affiant believes BROWN is talking about packaging and selling quantities of cocaine or cocaine base for street sale.

47.     **On February 16, 2023**, at approximately 8:55 p.m., an incoming call (Ref.# 803) was lawfully intercepted over telephone number (585) 683-5291 utilized by Namon BROWN from telephone number (315) 412-1543 utilized by Delarae SHEFFIELD. In this call, BROWN says, "I'm about to come get you in a minute." SHEFFIELD replies, "Uh, now? I was gonna go grab it right now and then you could just take the key up… up from my house or whatever."

48.     Based on my training, experience, and knowledge of this investigation, your Affiant believes SHEFFIELD and BROWN are conspiring to distribute narcotics and are using SHEFFIELD's residence at 11 Chapman Avenue to store quantities of those narcotics for sale on the street. Your Affiant further believes that when SHEFFIELD says "I was gonna go grab it right now" SHEFFIELD was referring to a quantity of narcotics, or proceeds from the sale of narcotics.

49.     **On February 16, 2023**, at approximately 9:35 p.m., an outgoing call (Ref.# 816) was lawfully intercepted over telephone number (585) 683-5291 utilized by Namon BROWN from telephone number (315) 412-1543 utilized by Delarae SHEFFIELD. In this call, BROWN asks SHEFFIELD which "hotel" she got in Auburn. SHEFFIELD says that there's "a room at the Days Inn" and that her "peoples just went to go grab it." Based on my training, experience, and knowledge of this investigation, your Affiant believes BROWN called SHEFFIELD about reserving a room at the Days Inn in Auburn, New York. Based on surveillance and intercepted phone calls over the course of the investigation, I believe the BROWN DTO would use hotel rooms to break down, package, and prepare controlled substances for street sale.

50.    **On February 18, 2023**, at approximately 9:56 a.m., an outgoing call (Ref.# 1048) was lawfully intercepted over telephone number (585) 683-5291 utilized by Namon BROWN. In this call, BROWN told an unidentified female to "just come see me by yourself. I had to tell Del that, too." The unidentified female replied, "Alright, I will." Moments later, BROWN said, "I don't have a problem telling you, um, 2.0 for a hundred but they gotta… you gotta come with more than a hundred dollars." In response, the unidentified female said, "Ok." BROWN then says, "Word. So, don't… if you wanted, like, me to give you, like, 2.0… man you can weigh it in front of me and all that." Based on my training, experience, and knowledge of this investigation, your Affiant believes BROWN is arranging a drug transaction with the unidentified female.

51.    **On February 18, 2023**, at approximately 2:55 p.m., an outgoing call (Ref.# 1077) was lawfully intercepted over telephone number (585) 683-5291 utilized by Namon BROWN from (315) 406-3256 utilized by an unidentified male, the contents of which are transcribed below:

**NB:    Namon BROWN aka "Bo"**
**UM:    Unidentified Male**

**[Start]**

**UM:    Yeah?**

**NB:    Yo what you had wanted, Junior?**

**UM:    Uh… probably, uh, probably a 40. Make it nice for me, though. I want 40.**

**NB:    Alright.**

**UM:    Alright.**

**NB:    Alright.**

**[End]**

52.      Based on my training, experience, and knowledge of this investigation, your Affiant believes BROWN is agreeing to sell $40 worth of narcotics to the unidentified male. This investigation has revealed that the BROWN DTO commonly discusses quantities of narcotics in terms of price when arranging drug sales. For example, a "40" would be approximately $40 worth of narcotics.

53.      **On February 18, 2023**, at approximately 3:00 p.m., an incoming call (Ref.# 1080) was lawfully intercepted over telephone number (585) 683-5991 utilized by Namon BROWN, from (315) 406-3556 utilized by an unidentified male, the contents of which are transcribed below:

**NB:**    **Namon BROWN aka "Bo"**
**UM:**    **Unidentified Male**

    **[Start]**

    **NB:**   **Yo.**

    **UM:**   **You in the truck by the guardrail?**

    **NB:**    **I'm gonna have you pull up on Del real quick, Junior.**

    **UM:**   **Huh?**

    **NB:**   **You feel like coming over to Del's street?**

    **UM:**   **Uh, are you over on Chapman?**

    **NB:**   **Yeah.**

    **UM:**   **Uh, yeah. I'll be right there.**

    **NB:**   **Alright.**

    **UM:**   **Alright.**

    **[End]**

54.     Based upon my training, experience, and knowledge of this investigation, in this call BROWN is telling the unidentified male to come to 11 Chapman Ave., the residence of SHEFFIELD and M.S., to complete a narcotics transaction.

55.     **On February 18**, **2023**, at approximately 3:56 p.m., an incoming call (Ref.# 1083) was lawfully intercepted over telephone number (585) 683-5291 used by Namon BROWN from telephone number (315) 975-0073 used by an unidentified male, the contents of which are transcribed below:

**NB:     Namon BROWN aka "Bo"**
**UM:     Unidentified Male**

**[Start]**

**NB:     Yo, Bob. What's up, Man? You need me?**

**UM:     Yeah, I might though. I gotta wait for my... for my ninja to bring me some money.**

**NB:     Alright, just call me then.**

**UM:     Alright. Yo, you got a ride?**

**NB:     Yeah.**

**UM:     Alright. I need a 40 my ninja.**

**NB:     Alright.**

**UM:     Hit me up.**

**NB:     Alright.**

**UM:     Yo, about half an hour.**

**NB:     Alright, just hit me. Let me know.**

**UM:     Alright, Bo.**

**NB:     Alright.**

**[End]**

56.    Based upon my training, experience, and knowledge of this investigation, in this call, your Affiant believes BROWN is arranging to sell approximately one gram of crack cocaine for $40.

57.    **On February 25, 2023**, at approximately 5:23 p.m.., an incoming call (Ref.# 10667) was lawfully intercepted over telephone number (315) 412-1543 utilized by D.S. from (585) 474-3083 utilized by D.S.  In this call, SHEFFIELD asks D.S. if D.S. is "bringing them honey buns?" D.S. tells SHEFFIELD he is going to "grab a couple." Moments later, SHEFFIELD says, "Yeah, because he want… he want them. He want a whole five." Based on my training, experience, and knowledge of this investigation, your Affiant believes SHEFFIELD and D.S. are discussing narcotics trafficking. Specifically, honey buns is a term frequently used by drug dealers and users to refer to bundles of heroin or fentanyl. A bundle is a collection of individual small baggies or envelopes of drugs, often rubber banded together in groupings of 10 or thereabout.

58.    **On February 27, 2023**, at approximately 2:00 p.m., an incoming call (Ref.# 10985) was lawfully intercepted over telephone number (315) 412-1543 utilized by Delarae SHEFFIELD, the contents of which are described below:

**DS:    Delarae SHEFFIELD aka "Del"**
**UM1:   Unknown Male 1**
**UM2:   Unknown Male 2**
**MS:    *Identity of MS is known to law enforcement***

**[Start]**

**DS:         Hello?**

**UM1:        Hey. Hey, you found me a ride?**

**MS:         Hey, I… I do got a ride coming, Duke. But I got held up 'cause the plug is here.**

**UM1:        The what?**

**MS:         The plug is here from the ROC. So I got this… I gotta kick it with him for a**

28

minute.

UM1:        Alright. Can you… can you [UI] because hooking me up would be appreciated.

UM2:        No, I know. I'll be up there in 20 minutes.

UM1:        Alright.

UM2:        Alright, peace.

[End]

59.     Following the above-referenced call, at approximately 2:30 p.m., surveillance team members observed a dark-colored GMC Acadia SUV, bearing Florida license plate number 51BXIS, parked at 11 Chapman Ave. in Auburn, New York. As referenced within this Affidavit, 11 Chapman Ave. is the residence of SHEFFIELD and M.S. During surveillance over the course of this investigation, BROWN has been observed operating the above descried GMC Acadia. Based on my training, experience, and knowledge of this investigation, your Affiant believes that the "plug" from Rochester is Namon BROWN, and that BROWN was at 11 Chapman Ave. to re-supply SHEFFIELD and M.S. with a quantity of narcotics. The term "Plug" is widely used by drug traffickers to refer to a drug supply source. At approximately 5:30 p.m. later that day, surveillance team members observed the above-referenced GMC Acadia parked in front of 72 Lake Vista Ct., Apartment B in Rochester, New York. As indicated previously, this location is one of the premises BROWN resides at.

60.     **On February 28, 2023**, at approximately 7:56 p.m., an outgoing call (Ref.# 2507) was lawfully intercepted over telephone number (585) 683-5291 utilized by Namon BROWN. In this call, BROWN tells an unidentified male that he is "about to bring Vee Vee over there". The unidentified male tells BROWN that it's not a good night for that, to which BROWN replies, "Yo, listen. This is what we gonna do. You tell me the day 'cause right now I'm losing money. I

29

gotta figure something out. I don't even have nobody to place out here stationary."

61.    Based on my training, experience, and knowledge of this investigation, your Affiant believes BROWN was telling the unidentified male that he is bringing "Vee Vee" who has been identified as Aaniyah CARTER, out to Auburn to sell drugs for him. This investigation has revealed that members of the BROWN DTO refer to CARTER as "Vee Vee." Based on my training, experience, and knowledge of this investigation, your Affiant also believes that BROWN was having difficulty placing permanent members of the BROWN DTO in Auburn, New York. This investigation has revealed that BROWN had placed at least three different individuals Auburn during an approximately six-month period, each one lasting a short time before being replaced.

62.    **On February 28, 2023**, at approximately 8:10 p.m., an incoming call (Ref.# 2511) was lawfully intercepted over telephone number (585) 683-5291 utilized by Namon BROWN from telephone number (315) 975-0073 utilized by an unidentified male, the contents of which are transcribed below:

**NB:    Namon BROWN aka "Bo"**
**UM:    Unidentified Male**

**[Start]**

**NB:    Yo, Bob. I'm not gonna… I'm not gonna be in town for another 45 minutes.**

**UM:    What's that?**

**NB:    I'm not gonna be there until, like 45 minutes.**

**UM:    Alright, then bring me a 50. I need one.**

**NB:    Alright.**

**UM:    Alright, bye.**

**NB:    Yup.**

**[End]**

63.    Based on my training, experience, and knowledge of this investigation, your Affiant believes that in this call BROWN was advising this unidentified male that he was travelling to Auburn, New York, and arranged to sell the unidentified male $50 worth of narcotics while he was in the area.

64.    **On March 3, 2023**, at approximately 12:46 p.m., an incoming call (Ref.# 3220) was lawfully intercepted over telephone number (585) 683-5291 utilized by Aaniyah CARTER to telephone number (315) 730-3105 utilized by an unidentified male. In this call, CARTER is talking to a customer regarding a narcotics transaction. The unidentified male tells CARTER he "has the buck" and asks CARTER if they can meet halfway. CARTER says she "No, I don't wanna walk with the drugs in me… on me."

65.    Based on my training, experience, and knowledge of this investigation, your Affiant believes that CARTER is distributing drugs in Auburn on behalf of Namon BROWN. When CARTER says she doesn't want to walk with drugs on her, your Affiant believes CARTER is fully aware of her involvement in narcotics distribution and is concerned about the possibility of being stopped by the police with drugs in her possession.

66.    **On March 3, 2023**, at approximately 4:30 p.m., an outgoing call (Ref.# 3272) was lawfully intercepted over telephone number (585) 683-5291 utilized by Aaniyah CARTER to telephone number (315) 283-2700 utilized by an unidentified male. In this call, the unidentified male asks CARTER if she wants him to "go to 28" to which CARTER replies, "Yeah, but I need you to pick me up. I can't serve you outside." Later in the conversation, CARTER asks the unidentified male is he wants "just 100", to which the unidentified male replies, "Yeah, I'm in the black Equinox right across the road from 28."

67.    At approximately 4:33 p.m., video surveillance of 28 Washington Street in Auburn, New York showed CARTER exiting the front door of 28 Washington Street, crossing the street, and entering the front, passenger-side door of a black-colored Chevrolet Equinox. Moments later, the Equinox was observed via covert camera as it left the area of 28 Washington Street. At approximately 4:35 p.m., through video surveillance, law enforcement observed the same, black-colored Equinox pulling up in front of 28 Washington Street. CARTER was observed exiting the vehicle and entering the front door of 28 Washington Street. Based on my training, experience, and knowledge of this investigation, your Affiant believes CARTER was serving the unidentified male $100 worth of narcotics.

68.    **On March 3, 2023**, at approximately 6:03 p.m., an incoming call (Ref.# 3309) was lawfully intercepted over telephone number (585) 683-5291 utilized by Aaniyah CARTER from telephone number (315) 975-0073 utilized by an unidentified male, the contents of which are transcribed below:

**AC:    Aaniyah CARTER aka "Vee Vee"**
**UM:    Unidentified Male**

**[Start]**

**UM:    Are you still down the street?**

**AC:    [talking to someone in background] You say what?**

**UM:    Uh, you... still down the street?**

**AC:    Yeah**

**UM:    Alright, could you, uh, bring a 50?**

**AC:    Um, I don't have no more of them. Just 100's.**

**UM:    Oh, shit.**

**AC:    Yeah, I'm all out.**

**UM:**  **Oh, damn.**

**AC:**  **Yup.**

**UM:**  **Alright.**

**AC:**  **Alright.**

**UM:**  **Let me call you back.**

**AC:**  **Alright.**

**[End]**

69.     Based on my training, experience, and knowledge of this investigation, the unidentified male is asking CARTER for a $50 quantity of narcotics, most likely cocaine base. CARTER is telling the unidentified male that she only has $100 quantities.

70.     **On March 4, 2023,** at approximately 12:12 p.m., an outgoing call (Ref.# 3396) was lawfully intercepted over telephone number (585) 683-5291 utilized by Aaniyah CARTER from (315) 664-7673 utilized by an unidentified male, the contents of which are transcribed below:

**AC:**     **Aaniyah CARTER aka "Vee Vee"**
**UM:**     **Unidentified Male**

**[Start]**

**UM:**  **Hey.**

**AC:**  **Um, do… I got… I could… I got 50 right now. You want me to come see you now?**

**UM:**  **Well, I'm still trying to get some more money up together but I will call you soon.**

**AC:**  **Alright.**

**UM:**  **I ended up spending it in 'Cuse, you know what I'm saying?**

**AC:**  **Oh, alright.**

**UM:  But I'm gonna get some more money up here.**

**AC:  Alright.**

**UM:  Alright.**

**[End]**

71.     Based on my training, experience, and knowledge of this investigation, Your Affiant believes CARTER is telling the unidentified male that she has $50 quantities of narcotics for sale.

72.     **On March 4, 2023**, at approximately 3:01 p.m., an incoming call (Ref.# 11524) was lawfully intercepted over telephone number (315) 412-1543 utilized by Delarae SHEFFIELD from telephone number (315) 916-4545 utilized by an unidentified female, the contents of which are transcribed below:

**DS:    Delarae SHEFFIELD aka "Del"**
**UF:    Unidentified Female**

**[Start]**

**UF:     Hello?**

**DS:     Hello?**

**UF:    Hey, I'm gonna go get $20, um, it's gonna take me a few minutes. I have to get it.**

**DS:    I don't…**

**UF:     So, are you around?**

**DS:    Yeah, but I don't have 20's. I don't have [UI]**

**UF:    Ah, shit. What do you have?**

**DS:    I… I have 50 but I'll do, like, 35/40.**

**UF:    Shit. I'll see what I can do. Alright, bye.**

**[End]**

73.    Based upon my training, experience, and knowledge of this investigation, your Affiant believes SHEFFIELD is arranging a drug transaction, most likely involving cocaine base. When the unidentified female asks SHEFFIELD if she has "20's", SHEFFIELD says she doesn't have 20's but she has "50's" and could sell the unidentified female $35 or $40 worth of cocaine base instead. Your Affiant is aware that drug dealers commonly use prices as a measurement for ordering drugs. When the unidentified female asks for 20's, she is requesting $20 worth of cocaine base from SHEFFIELD. Based on my training, experience, and knowledge of this investigation, your Affiant believes SHEFFIELD is saying that she only has $50 quantities of narcotics but would be willing to divide that quantity into $35 or $40 quantities for the unidentified female.

74.    **On March 7, 2023**, at approximately 9:53 a.m., an incoming call (Ref.# 3789) was lawfully intercepted over telephone number (585) 683-5291 utilized by Aaniyah CARTER from telephone number (585) 284-3775 utilized by an unidentified female. In this call, CARTER asks the unidentified female what she wants. The unidentified female tells CARTER she wants to order a "big, huge, fat 50" to which CARTER agrees. At approximately 10:02 p.m., video surveillance of 28 Washington Street in Auburn, New York, showed CARTER exiting the front door of 28 Washington Street and entering the driver's-side rear door of a Hyundai SUV bearing New York license plate number KBJ3599. After a few minutes, CARTER was observed exiting the Hyundai SUV and entering 28 Washington Street.

75.    Based on my training, experience, and knowledge of this investigation, your Affiant believes CARTER was arranging to sell $50 worth of narcotics, most likely cocaine base, to an unidentified female outside. Your Affiant further believes that the Hyundai SUV that CARTER entered soon after the phone call, was being driven by the same unidentified female from the preceding conversation.

35

76.    **On March 7, 2023**, at approximately 10:04 p.m., video surveillance of 28 Washington Street in Auburn showed Namon BROWN and another unidentified male arrive at 28 Washington Street in a dark-colored RAM pickup truck bearing New York license plate number KBU3006. Aaniyah CARTER was observed via surveillance cameras as she exited the front door of 28 Washington Street and entered the Ram pickup through the rear, passenger-side door. After a moment, the Ram pickup truck drives away with all three passengers inside. At approximately 10:42 p.m., an outgoing text message (Ref.# 3795) was lawfully intercepted over telephone number (585) 683-5291 utilized by CARTER. The text message read "Hey I'm back I got 50 and up".

77.    Based on my training, experience, and knowledge of this investigation, as well as my conversations with the investigative team, your Affiant believes Namon BROWN was in Auburn to re-supply CARTER with a quantity of narcotics. This investigation has revealed that CARTER works directly for BROWN in Auburn. In the above-referenced text message, CARTER texts an unidentified individual that she has "50 and up" approximately 40 minutes after meeting with BROWN.

78.    **On March 8, 2023**, at approximately 3:53 p.m., an incoming call (Ref.# 4066) was lawfully intercepted over telephone number (585) 683-5291 utilized by Aaniyah CARTER from telephone number (315) 730-7156 utilized by an unidentified male. In this call, CARTER says, "This is Vee. This is Bo's people." The unidentified male tells CARTER he is coming up to Washington Street and he wants "two-hundreds." CARTER says "I got you" before the call disconnects.

79.    Based on my training, experience, and knowledge of this investigation, your Affiant believes that CARTER is identifying herself as an employee of Namon BROWN. This investigation has revealed that drug customers in Auburn, New York refer to BROWN as "Bo."

When CARTER says she's "Bo's people" your Affiant believes CARTER is telling the customer she works for BROWN. Later in the call, the customer says he wants "two-hundreds" from CARTER. Based on my training, experience, and knowledge of this investigation, your Affiant believes the customer is requesting $200 worth of narcotics from CARTER.

80.    **On March 9, 2023**, at approximately 8:21 a.m. an outgoing call (Ref.# 103) was lawfully intercepted over telephone number (315) 604-6025 utilized by Delarae SHEFFIELD to telephone number (585) 683-5291 utilized by Aaniyah CARTER. In this call, SHEFFIELD tells CARTER that she is "about to come through." At approximately 8:25 a.m., an outgoing call (Ref.# 105) was lawfully intercepted over telephone number (315) 604-6025 utilized by SHEFFIELD to telephone number (585) 683-5291 utilized by CARTER. In this call, SHEFFIELD asks, "You want me to pull up right out front?" Carter replies, "Um yeah, I don't care. You could just, like, go around the corner." At approximately 8:26 a.m., an outgoing call (Ref.# 107) was lawfully intercepted over telephone number (315) 604-6025 utilized by SHEFFIELD to telephone number (315) 237-3899 utilized by an unidentified female. In this call, the unidentified female tells SHEFFIELD she "wants 40", to which SHEFFIELD replies, "Alright." After this call (at approximately 8:27 a.m.) surveillance officers observed a silver-colored Chevrolet Impala, bearing New York license plate number KBJ3913, parking in front of 28 Washington Street. CARTER was observed walking out of the front door of 28 Washington Street and entering the silver-colored Impala before driving away. At approximately 8:28 a.m., an outgoing call (Ref.# 108) was lawfully intercepted over telephone number (315) 604-6025 utilized by SHEFFIELD to telephone number (315) 237-3899 utilized by the above-referenced unidentified female. In this call, SHEFFIELD tells the unidentified female to "come outside."

81.    Based on my training, experience, and knowledge of this investigation, your Affiant believes that SHEFFIELD picked up Aaniyah CARTER for the purposes of procuring a

quantity of narcotics for the unidentified female referenced in the previous paragraph. This investigation has revealed that members of the BROWN DTO, when in Auburn, will travel to sell narcotics to customers. Numerous calls and texts lawfully intercepted during this investigation have shown CARTER directing customers to meet her around the corner from 28 Washington Street. Furthermore, numerous calls and texts lawfully intercepted during this investigation have revealed that SHEFFIELD will drive to a customer's location using the vehicles of friends and associates. Since SHEFFIELD placed a call to a customer minutes before she picked CARTER up from 28 Washington Street, your Affiant believes CARTER was supplying SHEFFIELD who, in turn, agreed to sell the unidentified female referenced above $50 worth of narcotics, thus furthering the goals of the conspiracy.

82.    **On March 9, 2023**, at approximately 8:54 a.m., an incoming call (Ref.# 4205) was lawfully intercepted over telephone number (585) 683-5291 utilized by Aaniyah CARTER. In this call, CARTER tells an unidentified female that she has "just 100's." The unidentified female says she only has $80 to spend, to which CARTER replies, "Whatchu tryin' to get? A 50?" The unidentified female says she'll have to get a 50 for now.

83.    Based on my training, experience, and knowledge of this investigation, your Affiant believes that in this call CARTER was agreeing to sell the unidentified female $50 worth of narcotics.

84.    **On March 9, 2023**, at approximately 6:01 p.m., an outgoing text (Ref.# 4217) was lawfully intercepted over telephone number (585) 683-5291 utilized by Aaniyah CARTER to (631) 562-4949 utilized by an unidentified individual, the contents of which are transcribed below:

**AC:  Aaniyah Carter aka "Vee Vee"**

**[Start]**

**AC:    You haven't met me yet I'm vee I'll treat you good depends if you loyal customer I'm**

**boe people**

**[End]**

85.    Based on my training, experience, and knowledge of this investigation, your Affiant believes that CARTER is identifying herself by her nickname and telling an unidentified individual that she will treat them good if they're loyal. CARTER also mentions being "boe people."  Your Affiant is aware that Namon BROWN is referred to as "Bo" or "Boe" by both workers and customers in Auburn, New York. Based on my training, experience, and knowledge of this investigation, your Affiant believes CARTER is identifying herself as a drug dealer working directly for BROWN. As indicated previously, I believe BROWN placed CARTER in Auburn, from Rochester, to sell drugs on his behalf.

86.    **On March 10, 2023**, at approximately 9:07 p.m., an incoming call (Ref.# 4493) was lawfully intercepted over telephone number (585) 683-5291 utilized by Aaniyah CARTER from (315) 567-9390 utilized by an unidentified male, the contents of which are transcribed below:

**AC:  Aaniyah Carter aka "Vee Vee"**
**NB:  Namon Brown aka "Bo"**
**UM:  Unknown Male**

**[Start]**

**AC:    Yeah, I'm coming right now. You gotta wait a minute though.**

**UM:    You gotta wait?**

**NB:    What up, Vee?**

**AC:    What's up? [laughs]**

**UM:    I'll be back.**

**NB:    I'm gonna come talk to you in a minute, man.**

**UM:    I'm... [UI]**

**[End]**

87.     Prior to the above-described call between CARTER and the unidentified male, surveillance officers observed Namon BROWN arriving at 28 Washington Street in Auburn, New York at approximately 9:06 p.m. BROWN exited his RAM pickup truck, bearing New York license plate number KBU 3006, and entered 28 Washington Street. At approximately 9:08 p.m., CARTER was observed exiting the front door of 28 Washington Street and walking down to the street corner to meet with the unidentified male, which I believe to be the unidentified male from the intercepted call above. At approximately 9:18 p.m., an incoming call (Ref.# 4495) was lawfully intercepted over telephone number (585) 683-5291 used by CARTER and Namon BROWN from telephone number (315) 567-9390 utilized by an unidentified male. In this call, BROWN answers the phone and tells CARTER to "go hit up Rick." The unidentified male tells BROWN that he only has $20. Approximately four minutes later, the same unidentified male calls telephone number (585) 683-5291 and speaks with BROWN. BROWN says, "I'm gonna do you this favor, Rick. But, you know, I don't really be selling 20's like that." BROWN further says he's sending CARTER out with something for the unidentified male. At approximately 9:28 p.m., surveillance officers observe CARTER exiting the front door of 28 Washington Street and approaching a pickup truck parked in front of 28 Washington Street. Approximately three minutes later, BROWN, utilizing telephone number (315) 683-5291 (Ref.# 4499), tells the unidentified male that he's sending a "nice piece out" for the unidentified male.

88.     Based on my training, experience, and knowledge of this investigation, your Affiant believes Namon BROWN was at 28 Washington Street to resupply the location with a quantity of narcotics. During the above-referenced call, the unidentified male tells BROWN he only has $20, to which BROWN responds, "I don't really be selling 20's like that." BROWN

then tells the customer that he is sending Aaniyah CARTER out with a "nice piece" for him. These calls coincide with surveillance camera footage of CARTER leaving 28 Washington Street and serving someone in a pickup truck parked out front. Based on my training, experience, and knowledge of this investigation, your Affiant believes BROWN was directing CARTER to serve $20 worth of narcotics to the customer.

89.    **On March 11, 2023**, at approximately 1:04 p.m., an incoming call (Ref.# 817) was lawfully intercepted over telephone number (315) 604-6025 utilized by Delarae SHEFFIELD from telephone number (315) 612-8714 utilized by an unidentified male. The contents of this call are transcribed below:

**DS:  Delarae Sheffield aka "Del"**
**MS:  *Identity of MS is known to law enforcement***
**UM:  Unknown Male**

**[Start]**

**DS:    Hello?**

**UM:    Hey, what's up?**

**DS:    What's up?**

**UM:    Not a thing. Are you home?**

**DS:    Uh, yeah.**

**UM:    [UI] for a 40?**

**DS:    Aww, shit… fuck. Damnit. It's… it's… it's, um, powder.**

**UM:    Say that again?**

**DS:    It's powder.**

**UM:    Oh, man. That doesn't cook back though, does it?**

**MS:    Yeah.**

41

DS:    Yes, it does.

MS:    It's silver-back.

UM:    Alright. I'll be right there. I got Jason with me.

MS:    Just come inside.

DS:    Come inside.

UM:    Alright.

[End]

90.    Based on my training, experience, and knowledge of this investigation, your Affiant believes this conversation pertains to SHEFFIELD and M.S. selling a quantity of powder cocaine to the unidentified male on the other line. The unidentified male asks SHEFFIELD and M.S. if the powder cocaine can "cook back" to which both SHEFFIELD and M.S. reply "Yeah." Based on my training, experience, and knowledge of this investigation, your Affiant believes SHEFFIELD and M.S. are telling the unidentified male that the powder cocaine can be "cooked" or altered to make cocaine base.

91.    **On March 13, 2023**, at approximately 6:16 p.m. an incoming call (Ref.# 4688) was lawfully intercepted from telephone number (585) 683-5291 utilized by Aaniyah CARTER from (315) 224-7297 utilized by an unidentified male. In this call, the unidentified male asks CARTER if he can stop by for "a buck" to which CARTER replies, "Yeah."

92.    Based on my training, experience, and knowledge of this investigation, your Affiant believes that in this call, CARTER agreed to sell the unidentified male approximately $100, or two grams of drugs, most likely cocaine base. This investigation has revealed that the BROWN DTO will typically refer to $100 quantities of narcotics as a "buck."

93.    **On March 16, 2023**, at approximately 5:08 p.m., an incoming call (Ref.# 5071) was lawfully intercepted over telephone number (585) 683-5291 utilized by Namon BROWN from telephone number (315) 567-9390 utilized by an unidentified male. In this call, BROWN asks the unidentified male if he likes the "20's" and asks if they're "big." The unidentified male tells BROWN they're too small and asks BROWN if he can get a 50. BROWN tells the unidentified male that he's at Walmart but he'll "weigh one out" for the unidentified male when he gets back.

94.    Based on my training, experience, and knowledge of this investigation, your Affiant believes that in this call, Namon BROWN agreed to weigh out $50 worth of narcotics for the unidentified male, most likely cocaine base. Your Affiant is aware, based on previous calls and text messages intercepted over BROWN's telephone, that BROWN will occasionally deal drugs directly to customers in Auburn. I believe BROWN may do this to ensure that they are satisfied and loyal customers, as he continues to grow his drug business in Auburn.

95.    **On March 16, 2023**, at approximately 5:59 p.m., an incoming call (Ref.# 5085) was lawfully intercepted over telephone number (585) 683-5291 utilized by Namon BROWN from telephone number (315) 884-0471 utilized by an unidentified male. In this call, BROWN tells the unidentified male that he's going to "have a number for y'all to call" in case "you don't like what a person is doing or you getting mistreated or anything like that." Based on my training, experience, and knowledge of this investigation, your Affiant believes the comments BROWN makes in this call evidence his leadership role in this drug trafficking operation.

96.    **On March 20, 2023**, at approximately 3:35 p.m., surveillance team members observed Namon BROWN, driving a Ram pickup bearing New York license plate KBU3006, pick up Aaniyah CARTER in front of 52 Dayton Street in Rochester, New York. BROWN and CARTER were then surveilled as they drove to Avis/Budget Rentals located at 1225 Jefferson

Road in Rochester, New York. Surveillance team members observed BROWN and CARTER leave the Ram pickup truck at Avis/Budget location and depart in a maroon-colored Toyota Corolla. At approximately 7:44 p.m., an outgoing text message (Ref.# 5698) was lawfully intercepted from telephone number (585) 683-5291 utilized by both CARTER and BROWN, to telephone number (315) 567-7685 utilized by an unidentified individual. In this message, BROWN writes "We coming Brody this boe sorry." At approximately 9:42 p.m., an outgoing text message (Ref.# 5722) was lawfully intercepted from telephone number (585) 683-5291 (which is used by both CARTER and BROWN) to telephone number (315) 567-7685 utilized by an unidentified individual. In this text message, the sender, whom I believe to be CARTER, writes "I'm here." At approximately 10:01 p.m., surveillance team members observed a white-colored Dodge Durango bearing Florida license plate number DZXR49 parking in front of 28 Washington Street in Auburn, New York. CARTER was observed exiting the vehicle and walking into 28 Washington Street shortly thereafter.

97.    Based on my training, experience, and knowledge of this investigation, your Affiant believes Namon BROWN picked Aaniyah CARTER up in Rochester for the purpose of driving her to Auburn, New York. Your Affiant further believes that BROWN supplied CARTER with a quantity of narcotics for distribution in Auburn. As referenced above in the paragraph above BROWN sent a text message to an unknown individual writing "We coming Brody this Boe sorry." Based on my training, experience, and knowledge of this investigation, your Affiant believes BROWN was telling a customer that he and CARTER were on their way back to Auburn to deliver a quantity of narcotics.

98.    **On March 21, 2023**, at approximately 4:53 p.m., an incoming text message (Ref.# 5879) was lawfully intercepted over telephone number (585) 683-5291 utilized by Aaniyah CARTER from telephone number (315) 604-0616 utilized by an unidentified individual. In this

message, the unidentified individual says, "Yo please I will meet you something can I meet you at Speedway right now I'll meet you at Speedway down on State Street I just need a fix because I'm so f****** geeking off of my ivy." At approximately 5:17 p.m., an outgoing text message (Ref.# 5899) was lawfully intercepted over telephone number (585) 683-5291 utilized by CARTER to telephone number (315) 604-0616. In this message, CARTER asks, "Are you coming." At approximately 5:17 p.m., surveillance team members observed an unidentified female arrive at 28 Washington Street on a bicycle. Moments later, an incoming text message (Ref.# 5900) was lawfully intercepted over CARTER's number from telephone number (315) 604-0616 saying, "Here" to which CARTER replied, "Okay coming." At approximately 5:20 p.m. surveillance team members observed CARTER exit the front door of 28 Washington Street and approach the unidentified female. CARTER and the unidentified female speak for a moment, and then CARTER returned to 28 Washington Street and the female left the area.

99.    Based on my training, experience, and knowledge of this investigation, including the text message exchange between CARTER and the unidentified female, coupled with surveillance observations, your Affiant believes CARTER was selling the unidentified female a quantity of narcotics.

100.    **On March 21, 2023**, at approximately 7:58 p.m., an incoming call (Ref.# 5916) was lawfully intercepted over telephone number (585) 683-5291 utilized by Aaniyah CARTER from telephone number (325) 546-4635 utilized by an unidentified male. The contents of this call are described below:

**AC:    Aaniyah Carter aka "Vee Vee"**
**UF:    Unknown Female**

**[Start]**

**UM:   Hey.**

45

**AC:**   Yo.

**UM:**   Yo, it's Holley.

**AC:**   Oh, what's up Holley?

**UM:**   I need a half-buck.

**AC:**   I don't have no 50's.

**UM:**   You don't have none?

**AC:**   No.

**UM:**   Oh, shit. That's all I got.

**AC:**   You could get a 40.

**UM:**   You got a 40?

**AC:**   I got 2 [UI]. I got dubs.

**UM:**   Yeah, yeah, yeah… I'll do that.

**AC:**   Ok.

**UM:**   Alright, I'll be down. I'll call you when I get over there.

**AC:**   Alright.

**[End]**

101.    At approximately 8:03 p.m., surveillance team members observed a white-colored sedan pull up and park in front of 28 Washington Street Moments later, CARTER was observed exiting 28 Washington Street and entering the sedan before the sedan drives away. At approximately 8:11 p.m., the white-colored sedan referenced above returns to 28 Washington Street. CARTER was then observed exiting the vehicle and entering 28 Washington Street. Based on my training, experience, and knowledge of this investigation, your Affiant believes CARTER sold the unidentified male in the sedan $40 worth or narcotics.

102.    **On March 21, 2023**, at approximately 8:51 p.m., an incoming call (Ref.# 5940) was lawfully intercepted over telephone number (585) 683-5291 utilized by Aaniyah CARTER from telephone number (315) 604-6025 utilized by Delarae SHEFFIELD. In this call, CARTER accuses SHEFFIELD of stealing her Auburn customers. SHEFFIELD tells CARTER that before she moved down to Georgia, they were all her customers and that she "gave them to Bo" before she left. SHEFFIELD goes on the say that at the end of the day, "the money goes to Bo anyways." CARTER then tells SHEFFIELD that she (CARTER) "gets paid for this anyways… just like you." Later in the conversation, SHEFFIELD says, "It's like a loyalty thing. We… we deal with the same people because I gave Bo every last phone number."

103.    Based on my training, experience, and knowledge of this investigation, your Affiant believes CARTER and SHEFFIELD are discussing their employment under Namon BROWN. As referenced in the above conversation, SHEFFIELD tells CARTER that she gave "Bo" all of her Auburn customer's phone numbers before she left for Georgia. As referenced multiple times within this Affidavit, SHEFFIELD and CARTER refer to BROWN as "Bo." SHEFFIELD goes on to say that at the end of the day, "all of the money goes to Bo." Based on my training, experience, and knowledge of this investigation, and based on the fact that SHEFFIELD and CARTER pay BROWN with the proceeds from their drug sales, your Affiant believes BROWN obtains bulk quantities of controlled substances in the Rochester area, which he then provides to his drug dealing associates in Auburn, New York.

104.    **On March 23, 2023**, at approximately 5:22 p.m., surveillance team members observed Namon BROWN, driving a white-colored Dodge Durango SUV bearing Florida license plate number DZXR49, arrive and park in front of 28 Washington Street in Auburn, New York. BROWN sat in the driver's seat of the vehicle for approximately four minutes before exiting the vehicle and entering 28 Washington Street through the front door. At approximately 5:34 p.m.,

an outgoing call (Ref.# 3884) was lawfully intercepted over telephone number (315) 604-6025 utilized by Delarae SHEFFIELD from telephone number (315) 406-0751 utilized by M.S. In this call, M.S. was frantically asking for SHEFFIELD's location. SHEFFIELD tells M.S. she's "on her way to Chapman" and asks M.S. what's wrong. M.S. says he can't handle the "connect shit" and that "Bo is gonna be here any minute." SHEFFIELD tells M.S. that she will take care of it, to which M.S. replies "I need to send you to make these licks while I take care of Bo."

105.    At approximately 5:44 p.m., surveillance team members observe BROWN exit 28 Washington Street, get in the white-colored Dodge Durango, and leave the area. Using a Global Positioning System, commonly referred to as GPS, attached to the above-referenced Dodge Durango, surveillance team members were able to observe BROWN's route of travel from 28 Washington Street. At approximately 5:53 p.m., an incoming call (Ref.# 3891) was lawfully intercepted over telephone number (315) 604-6025 utilized by Delarae SHEFFIELD. In this call, SHEFFIELD told an unidentified female that her "connect just got here" and that she had to go to the house to "deal with her connect." At approximately 5:50 p.m., GPS data showed BROWN's Dodge Durango parked at 11 Chapman Avenue, the residence of Delarae SHEFFIELD. Approximately 10 minutes later, New York State Police investigators were able to physically observe BROWN leaving 11 Chapman Ave., enter the Dodge Durango, and drive away.

106.    Based on my training, experience, and knowledge of this investigation, your Affiant believes Namon BROWN was in Auburn to deliver a quantity of drugs and to collect drug proceeds from CARTER and SHEFFIELD. In this call, when SHEFFIELD tells the unknown female that her "connect just got here", I believe SHEFFIELD is saying that her drug supply source had arrived. This statement was made over a call that occurred approximately three minutes after BROWN was observed arriving at 11 Chapman Avenue.

107.    **On March 27, 2023**, at approximately 6:24 p.m., an incoming call (Ref.# 6657) was lawfully intercepted over telephone number (585) 683-5291 utilized by Aaniyah CARTER from telephone number (315) 920-6573 utilized by an unidentified male. The contents of this call are transcribed below:

**AC:   Aaniyah Carter aka "Vee Vee"**
**UM:   Unidentified Male**

**[Start]**

**AC:    Yo. Hello?**

**UM:   Yo. Bo leave yet?**

**AC:    Yeah, he left.**

**UM:   Huh?**

**AC:    He left.**

**UM:   Vee?**

**AC:    Yeah, he left.**

**UM:   I need you to bring me a... a 200.**

**AC:    Damn, where you at?**

**UM:    Moravia.**

**AC:    How the fuck, boy... how the fuck am I gonna get out there?**

**UM:   [UI]**

**AC:   I dunno? I'm gonna see if I can get a ride out there.**

**UM:   Alright, let me know.**

**AC:    Alright.**

**UM:   I'll send you the address.**

**AC:    Alright.**

**UM:  Alright.**

**[End]**

108.    Based on my training, experience, and knowledge of this investigation, your Affiant believes that Namon BROWN resupplied Aaniyah CARTER with a quantity of narcotics and CARTER, in turn, is arranging to sell a $200 quantity of narcotics to the unidentified male. As referenced within this Affidavit, CARTER and CARTER's customers in Auburn, New York refer to Namon BROWN as "Bo." Earlier that day, at approximately 2:33 p.m., surveillance team members observed BROWN arrive at 28 Washington Street in Auburn, in a dark-colored Hyundai Santa Fe bearing New York license plate number KVK7066. BROWN, wearing black pants and a black shirt, exited the vehicle and entered 28 Washington Street through the front door. At approximately 2:59 p.m., surveillance team members observed BROWN and CARTER exit 28 Washington Street, enter the dark-colored Hyundai Santa Fe, and leave the area.

109.    **On March 28, 2023**, at approximately 1:09 p.m., a series of telephone calls were lawfully intercepted over telephone number (585) 683-5291 utilized by Aaniyah CARTER and Namon BROWN (Ref. #'s 6749, 6756, 6778, and 6784). In this series of calls, CARTER begins by telling an unidentified male that "Bo is on his way out here" and he's "about to bring me something." At approximately 4:34 p.m., surveillance team members observed BROWN arrive and park in front of 28 Washington Street in Auburn, New York, in a dark-colored Hyundai Santa Fe bearing New York license plate number KYK 7066. At approximately 5:04 p.m., surveillance team members observed CARTER exit 28 Washington Street and enter the Hyundai Santa Fe through the passenger-side front door. Moments later, the Hyundai Santa Fe is observed leaving 28 Washington Street when BROWN, utilizing telephone number (585) 683-5291, placed an outgoing telephone call to telephone number (315) 604-6025 utilized by Delarae SHEFFIELD. In this call, SHEFFIELD asks BROWN to pull up to 11 Chapman Avenue.

BROWN then tells SHEFFIELD that he wants to see his "son" "Bull", referring to M.S. At approximately 6:34 p.m., BROWN, utilizing telephone number (585) 683-5291, placed an outgoing call to an unidentified female utilizing telephone number (315) 209-7068. In this call, BROWN asks the unidentified female, "You think your credit is good with me?" to which the unidentified female replies, "Yeah… it's only a dub." BROWN then tells the unidentified female that she can have a "dub" and that CARTER will deliver it.

110.    Based on my training, experience, and knowledge of this investigation, and based upon the above-referenced telephone calls and corresponding surveillance, your Affiant believes that BROWN travelled to Auburn to re-supply both CARTER and SHEFFIELD with quantities of narcotics for the purposes of street-level distribution. Prior surveillance operations, accompanied by lawfully intercepted telephone calls, has revealed that BROWN will typically visit CARTER, SHEFFIELD, and M.S. when travelling to Auburn for the purpose of re-supplying these individuals with narcotics and to collect drug proceeds from them. Prior to BROWN arriving, CARTER will commonly place outgoing calls and text messages to and receive incoming calls and text messages from customers. During these calls and text messages, CARTER will tell customers that "Bo" is on his way out there. As referenced within this Affidavit, your Affiant is aware that Namon BROWN is commonly referred to as "Bo" in Auburn.

111.    **On March 28, 2023**, an outgoing call (Ref.# 6811) was lawfully intercepted over telephone number (585) 683-5291 utilized by Aaniyah CARTER. In this call, an unidentified female asks CARTER if she can purchase $100 worth of narcotics for $90. CARTER rejects the unidentified female's request and says that BROWN will be in Auburn later that night and that the unidentified female can ask BROWN if he is willing to sell $100 worth of narcotics for $90.

112.    Based on my training, experience, and knowledge of this investigation, your Affiant believes that Aaniyah CARTER is indicating that Namon BROWN is her employer and ultimately makes the final decisions on all drug transactions, evidencing BROWN's leadership role within the BROWN DTO.

113.    **On April 4, 2023**, at approximately 5:36 p.m., an incoming call (Ref.# 8019) was lawfully intercepted over telephone number (585) 683-5291 utilized by Aaniyah CARTER from telephone number (315) 400-7219 utilized by Namon BROWN. In this call, BROWN asks CARTER how much product CARTER has left, to which CARTER replies, "I only got thirteen 20's." BROWN then asks CARTER, "I gave you, like, what? 42?" To which CARTER replies, "Yeah." BROWN then says that the product went quickly, and that CARTER is "doing good".

114.    Based on my training, experience, and knowledge of this investigation, I believe BROWN and CARTER are discussing how fast drugs were being sold in Auburn.

115.    **On April 7, 2023**, at approximately 9:30 a.m., an outgoing text message (Ref.# 8647) was lawfully intercepted over telephone number (585) 683-5291 utilized by Aaniyah CARTER. In this message, CARTER says, "I'm lazy? Nigga I serve like 100 people every single day! You ride a fucking bike **** you think I act like this to other people nobody else wasted my time before so I didn't have to tell them about they self you sitting here lying acting like you was out there for 10 minutes bitch I sleep! I'm not a crackhead like you & be up all damn night I actually get some."

116.    Based on my training, experience, and knowledge of this investigation, your Affiant believes CARTER is admitting to serving quantities of narcotics to 100 customers per day in Auburn, New York. Based on my training, experience, and knowledge of this investigation, your Affiant believes CARTER is selling quantities of these narcotics at the direction of Namon BROWN.

117.    **On April 9, 2023**, at approximately 1:06 p.m., an incoming call (Ref.# 8793) was lawfully intercepted over telephone number (585) 683-5291 utilized by Aaniyah CARTER. In this call, an unidentified male says to Carter, "I drove back out to the shop, man, and put that thing on a fucking plate and, uh, hon I gave you a hundred bucks." CARTER then replies, "Yeah, that's a hundred piece." The unidentified male then tells CARTER that it was one piece and then "fucking crumbs." CARTER informs the unidentified male that "Bo literally scaled it last night when he was here. It's a hundred piece."

118.    Based on my training, experience, and knowledge of this investigation, your Affiant believes CARTER is referring to Namon BROWN as the individual that weighed out the "hundred piece" in front of CARTER.

119.    **On April 17, 2023,** law enforcement made the following observations via covert cameras and GPS tracking devices. At approximately 3:19 p.m., MARTIN's Chevrolet Silverado (NY Reg. KAW6554) was observed leaving 1408 Lake Avenue. The vehicle traveled to 55 Murray Street and was observed arriving at approximately 3:30 p.m. The Silverado was observed leaving 55 Murray Street at approximately 3:44 p.m. and returning to 1408 Lake Avenue at approximately 3:55 p.m. At approximately 4:09 p.m. the Silverado was observed leaving 1408 Lake Avenue once again and GPS tracking devices indicated the vehicle then traveled to 541 Lake Avenue. A white dodge Durango frequently used by Namon BROWN, bearing FL Reg. DZXR49 was also located at 541 Lake Avenue at this time, according to a separate GPS tracker on that vehicle. The GPS tracker for the Silverado indicated that it left Lake Avenue minutes later, traveled to Ridge Road, and was then observed arriving at 79 Bloss Street at approximately 5:14 p.m.  Law enforcement observed via camera as MARTIN exited the driver's seat and BROWN exited the passenger side. BROWN, MARTIN and two unidentified males were then observed bringing home improvement items from the back of the truck and bringing them into

79 Bloss Street. The investigation has revealed that MARTIN is a bulk supply source of cocaine for Namon BROWN.

120.     **On April 18, 2023**, at approximately 6:42 p.m., an incoming call (Ref.# 78) was lawfully intercepted over telephone number (315) 400-7219 utilized by Namon BROWN from telephone number (315) 283-2002 utilized by an unidentified male. In this call, the unidentified male is with Aaniyah CARTER at 28 Washington Street when the call is placed to BROWN. BROWN tells the unidentified male to put CARTER on the phone. BROWN proceeds to tell CARTER to give the unidentified male "150" to which CARTER replies "In money?" BROWN then instructs CARTER to ask the unidentified male how he would want it. The unidentified male tells BROWN to "do a hundred in that and 50 cash." BROWN can be heard agreeing to this arrangement.

121.     Based on my training, experience, and knowledge of this investigation, your Affiant believes Namon BROWN and Aaniyah CARTER are discussing a narcotics transaction with the unidentified male. When the unidentified male requests "a hundred in that and 50 cash" from BROWN and CARTER, your Affiant believes the unidentified male is requesting $100 worth of narcotics and $50 in currency, which BROWN gives CARTER his approval to go ahead with.

122.     Later on April 18, 2023, beginning at approximately 7:13 p.m., law enforcement made a number of surveillance observations of Namon BROWN meeting up with Anthony MARTIN. At approximately 7:13 p.m., law enforcement observed BROWN arriving at 55 Murray Street in a white Dodge Durango bearing Florida registration DZXR49. At approximately 8:05 p.m. MARTIN was observed via covert camera leaving from 1408 Lake Avenue in his Chevrolet Silverado bearing New York registration KAW6554. According to a GPS tracking device, MARTIN drove directly to BROWN's drug house at 55 Murray Street,

arriving at 8:12 p.m. At 8:15 p.m. MARTIN's Silverado left 55 Murray Street and based on GPS tracking, traveled directly to 185 Joseph Avenue (the residence of J.O., and a location used by Jose ENCARNACION for drug distribution purposes). At 8:21 p.m. MARTIN and BROWN were observed via covert camera, exiting MARTIN's Silverado and entering 185 Joseph Avenue. At 8:30 p.m. law enforcement observed J.O. exit 185 Joseph Avenue and enter the trunk of a silver Lexus bearing New York registration KSK 2396. J.O. was observed retrieving a black bag out of the trunk and going back into 185 Joseph Avenue. At approximately 9:04 p.m., BROWN and MARTIN are observed leaving 185 Joseph Avenue in Chevrolet Silverado bearing New York license plate number KAW6554. Approximately ten minutes later, 9:14 p.m., the Chevrolet Silverado is observed arriving at 115 Murray Street, a known residence of Adam BOWEN and distribution house supplied by BROWN. An unknown male approaches the vehicle and has a brief conversation with the occupants before the vehicle leaves. At approximately 9:25 p.m., surveillance team members then observe the Chevrolet Silverado arrive at 1408 Lake Avenue, a location this investigation has revealed to be a narcotic stash house for MARTIN.

123.    Your Affiant is aware that drug traffickers will typically follow a pattern when they 're-up' their drug supply. Your Affiant believes that BROWN and MARTIN met with J.O. at 185 Joseph Avenue for the purpose of purchasing and packaging narcotics for street distribution. Your Affiant further believes that BROWN and MARTIN took the above-referenced narcotics from 185 Joseph Avenue to 1408 Lake Avenue to stash the supply in anticipation of breaking it down for street-level distribution. 185 Joseph Avenue is a location that was used by ENCARNACION and J.O. for narcotics trafficking purposes over the course of the conspiracy. Based on my training, experience, and knowledge of this investigation, your Affiant believes the events that transpired on the date and times referenced in paragraph 120 above indicate a narcotics distribution conspiracy between BROWN, MARTIN, ENCARNACION,

and J.O.

124.    **On April 25, 2023**, at approximately 6:42 p.m., an outgoing call (Ref.#13) was lawfully intercepted over telephone number (315) 400-7219 utilized by Namon BROWN to telephone number (315) 604-6025 utilized by Delarae SHEFFIELD. In this call, BROWN tells SHEFFIELD to "meet me at the hotel you always get from me," to which SHEFFIELD replies, "Alright."

125.    Based on my training, experience, and knowledge of this investigation, your Affiant believes BROWN was instructing SHEFFIELD to meet at the Days Inn in Auburn, New York. I believe the purpose of this meeting at the hotel is either for BROWN to re-supply SHEFFIELD or to have SHEFFIELD come to the hotel to assist with breaking down and packaging bulk-controlled substances for individual street sale.

126.    **On May 5, 2023**, at approximately 6:26 p.m., an incoming call (Ref.# 189) was lawfully intercepted over telephone number (315) 400-7219 utilized by Namon BROWN. In this call, BROWN tells Aaniyah CARTER, "Yo just give him two 30's, Vee Vee." CARTER asks BROWN, "So how much does he owe you then?" to which BROWN responds "180." CARTER then tells an unidentified male in the background that the unidentified male owes BROWN 50 and 30 plus the "two buddies" CARTER has right there. The unidentified male tells BROWN he probably won't see BROWN in Auburn that night but hopes BROWN comes out on Monday.

127.    Based on my training, experience, and knowledge of this investigation, your Affiant believes BROWN was instructing CARTER to give the unidentified male two $30 quantities of narcotics and the unidentified male will owe BROWN the $180 at a later date. At approximately 7:39 p.m., BROWN's white-colored Dodge Durango was observed, via GPS vehicle tracking, leaving BROWN's residence of 280 E. Broad Street in Rochester, New York heading toward Auburn, New York. At approximately 8:52 p.m., BROWN's Dodge Durango

was observed arriving at 174 Genesee Street in Auburn, New York. Based upon the above-reference conversation and surveillance conducted by members of the surveillance team, your Affiant believes BROWN was delivering a quantity of narcotics to CARTER in Auburn and picking up the proceeds for previous drug deals conducted by CARTER on behalf of BROWN. This investigation uncovered the location at 174 Genesee Street as a new drug distribution location for the BROWN DTO in Auburn, New York. Numerous calls lawfully intercepted during this investigation revealed CARTER serving narcotics to customers at 174 Genesee Street after being asked to vacate the premises at 28 Washington Street. Members of the BROWN DTO were asked to leave the location at 28 Washington Street due to a high volume of foot traffic and hand-to-hand narcotics transactions. Your Affiant believes that BROWN began to pay the tenant of 174 Genesee Street, just as he had paid the tenant of 28 Washington Street, in both U.S. currency and narcotics, for the purpose of using 174 Genesee Street as a new distribution location for the BROWN DTO.

128. **On May 6, 2023,** BROWN's Dodge Durango (FL Reg. DZXR49) was observed by law enforcement via covert camera as it backed into the driveway of the first house west of 55 Murray Street. Law enforcement then observed BROWN walk directly to the rear of 55 Murray Street and enter the location. At approximately 12:51 p.m. two unidentified white males approached the rear window of 55 Murray Street. They appeared to make an exchange with someone within the residence, consistent with a hand-to-hand drug transaction. Over the course of this investigation, law enforcement observed numerous similar apparent hand to hand drug transactions take place at 55 Murray Street.

129. **On May 24, 2023**, at approximately 6:25 p.m., surveillance team members observed Namon BROWN arrive at 185 Joseph Avenue, in Rochester, New York, in a dark-colored Chevrolet Impala bearing New York license plate number LBF4657. The residence at

185 Joseph Avenue is a residence used by co-conspirator Jose ENCARNACION a/k/a Papi for drug trafficking purposes. BROWN was observed walking in through the front door of 185 Joseph Avenue with what appeared to be an empty, dark-colored bag slung around his shoulder. Approximately three minutes later, BROWN was observed exiting 185 Joseph Avenue with the same dark-colored sling bag. Surveillance team members observed the dark-colored bag appeared to contain a bulky item, not observed to be in the bag prior to entering the residence. At approximately 6:35 p.m., ENCARNACION was observed exiting 185 Joseph Avenue and walking toward a dark-colored Toyota Camry bearing New York license plate number KKM1581, which is a vehicle registered to Pedro MARTINEZ. ENCARNACION entered MARTINEZ's vehicle through the front, passenger-side door before the vehicle left the area.

130.    Based on my training, experience, and knowledge of this investigation, your Affiant believes Namon BROWN visited Jose ENCARNACION at 185 Joseph Avenue for the purpose of acquiring a quantity of narcotics for individual street sale.

131.    **On June 9, 2023**, at approximately 6:47 p.m., surveillance team members observed Namon BROWN speaking with Jose ENCARNACION in the driveway of 91 Bloss Street. Moments later, Pedro MARTINEZ was observed as he approached a white and black-colored Ford Explorer bearing New York license plate number KCH4504 parked in the grass lot between 91 Bloss Street and 79 Bloss Street. Law enforcement observed MARTINEZ lower the third-row seat of the Ford Explorer revealing a hidden compartment. Within the hidden compartment, surveillance team members observed MARTINEZ retrieve two brick-shaped packages, one wrapped in tin foil, and one wrapped in clear, plastic shrink wrap. Investigators were able to observe the clear, plastic wrapped package to contain a white-colored substance. Law enforcement then observed MARTINEZ hand BROWN the clear, plastic wrapped package. MARTINEZ was then observed picking up the tin foil-wrapped package, placing it under his

arm, and walking back toward 91 Bloss Street with BROWN and ENCARNACION. At approximately 7:03 p.m., BROWN was observed leaving 91 Bloss Street, the exact whereabouts of the clear plastic wrapped package are not captured on surveillance. At approximately 7:54 p.m., BROWN returned to 91 Bloss St carrying a black and white-colored shopping bag in his right hand.

132.    Based on my training, experience, and knowledge of this investigation, your Affiant believes that Namon BROWN, Jose ENCARNACION, and Pedro MARTINEZ are conspiring to distribute narcotics. Your Affiant is aware that drug dealers will typically wrap kilogram-sized quantities of narcotics in plastic or tin foil wrap to conceal their products. Your Affiant is also aware, based on my training and experience, that kilogram-sized quantities of narcotics are typically packaged in rectangular-shaped packaging, commonly referred to as "bricks." Based on the size of the packages, the type of packaging, the effort to conceal these packages within the hidden compartment of a vehicle, and the white-colored substance seen within one of the packages, your Affiant believes that BROWN, ENCANACION, and MARTINEZ were conspiring to distribute two kilograms worth of narcotics in the area of 91 Bloss Street. Your Affiant further believes that the bag BROWN was observed carrying when he returned to 91 Bloss Street contained bulk U.S. currency that BROWN intended to pay to MARTINEZ and ENCARNACION in exchange for the kilogram-sized quantity of narcotics.

133.    **On June 10, 2023**, at approximately 2:59 p.m., surveillance team members observed Anthony MARTIN arrive at 79 Bloss Street in a Chevrolet Silverado pickup truck bearing New York license plate number KAW6554. Approximately 30 minutes later, at 3:31 p.m., MARTIN and Jose ENCARNACION are observed walking from the front 79 Bloss Street to MARTIN's pickup truck. ENCARNACION was observed to have a dark-colored satchel strapped across his shoulder. MARTIN and ENCARNACION engaged in a brief conversation

before MARTIN left the area in the pickup truck and ENCARNACION walked back toward 79 Bloss Street.

## ADAM BOWEN

134.    On May 25, 2023, at approximately 12:28 p.m. law enforcement made certain observations of a GPS tracking device that was affixed to MARTIN's Chevrolet Silverado (NY reg. KAW6554). At about this time, GPS data indicated the Silverado left 548 Wintergreen Way and arrived at 1408 Lake Avenue at approximately 12:49 p.m. The arrival of the Silverado was confirmed visually by way of a covert camera in the area of 1408 Lake Avenue. The Silverado then traveled to a gas station across the street (1469 Lake Avenue). At about 1:01 p.m. the Silverado left the gas station and traveled to 565 Lake Avenue, parking in a lot. Law enforcement used a City camera to confirm this visually. At approximately 1:17 p.m. MARTIN was observed running across the street in the direction of 568/570 Lake Avenue. MARTIN was holding a large, light colored bag in his hand. The Silverado was observed parked next to an Acura bearing NY registration KRK6879 known to be used by Adam BOWEN. At approximately 2:30 p.m. MARTIN and BOWEN were observed walking down the sidewalk, from the area of a door marked 568/570 Lake Avenue. BOWEN was wearing a backpack while MARTIN no longer appeared to be holding the previously described large, light-colored bag. GPS data indicates that shortly thereafter, MARTIN left the area and arrived at 1408 Lake Avenue at approximately 2:35 p.m.

135.    During the week of June 1, 2023, CS-1 provided law enforcement with information indicating that Adam BOWEN was currently residing at 115 Murray Street and that he/she believes that Anthony MARTIN was supplying BOWEN with quantities of narcotics.  Over the course of this investigation, Adam BOWEN was observed to be residing at this location on multiple occasions. Based on the information provided by CS-1, physical surveillance of BOWEN

and 115 Murray St. Apartment 1, and based on the investigation to date, I believe BOWEN to be an associate or co-conspirator in the BROWN DTO.

136.    On June 9, 2023, at approximately 8:21 p.m., using a combination of covert camera surveillance and GPS tracking data, MARTIN was observed leaving 548 Wintergreen Way in his Silverado. MARTIN traveled to 115 Murray Street, Apartment 1, and at about 8:46 p.m. law enforcement observed Adam BOWEN exit the back door to this apartment. BOWEN was observed unlocking the passenger side door of a Honda Accord, reaching into the passenger area, and removing a package. BOWEN was then observed entering the passenger seat of MARTIN's Silverado. BOWEN was in the truck for approximately two minutes before getting out of the Silverado and returning to Apartment 1. MARTIN then left the area. Based on my training, experience and knowledge of the investigation to date I believe BOWEN was paying MARTIN for narcotics MARTIN had previously provided him.

137.    Over the course of the investigation, through surveillance and GPS tracking data, law enforcement has observed that MARTIN has a fairly consistent route that he takes on a daily basis, in his Silverado. 115 Murray Street is usually one of the locations that MARTIN will stop at on a day to day basis. On a number of occasions that MARTIN did *not* stop at 115 Murray Street, it has been observed that he has stopped at 25 Ravine Avenue. MARTIN and BOWEN have been observed meeting in the rear at 25 Ravine Avenue over the course of this investigation. Based on my training, experience and knowledge of the investigation, which includes the *Mirandized* interview of Adam BOWEN, your Affiant believes MARTIN supplies BOWEN with bulk quantities of cocaine, which BOWEN then distributes to others.

## CONFIDENTIAL SOURCE INFORMATION

138.    The investigative team met with a confidential source in early Summer 2023. The individual provided law enforcement with insider information concerning the BROWN DTO. This individual was meeting with law enforcement with the hope of obtaining a more favorable outcome or sentence in connection with felony drug charges this individual is facing. In summary, this individual confirmed that JOSE ENCARNACION was a bulk supply source of cocaine and fentanyl for the BROWN DTO. This individual also confirmed that BROWN's Rochester drug houses, were on Bloss and Murray Street, among others.

## SEARCH WARRANTS

139.    On or about June 21, 2023, the Hon. Charles Schiano, Monroe County Supreme Court Judge, issued search warrants for a number of locations and vehicles relating to this investigation including, but not limited to: 280 E. Broad Street Apartment 901, Rochester, New York; 1408 Lake Avenue, Rochester, New York; 1 Antoinette Drive Apartment 1, Rochester, New York; 548 Wintergreen Way, Brighton, New York; 185 Joseph Ave., Rochester, New York; 91 Bloss Street, Rochester, New York; 25 Ravine Avenue Apartment 305, Rochester, New York; 103 Thompson Road, Henrietta, New York;  115 Murray Street Apartment 1, Rochester, New York; among other locations. The Hon. Charles Schiano, Monroe County Supreme Court Judge, also issued a search warrant for a Toyota Camry bearing New York State license plate number KKM 1581.  These search warrants were executed throughout the morning and afternoon of June 22, 2023. The results from these search warrant executions are described below.

## 280 E. BROAD STREET, APARTMENT 901

140.    On or about June 22, 2023, at approximately 5:00 a.m., the RPD Special Weapons and Tactics (SWAT) team and SIS investigators executed the warrant at the 280 E. Broad Street,

Apartment 901. Shortly after making entry into the location, SWAT team members encountered BROWN in the bed of the Master Bedroom. BROWN was detained by SWAT team members while the residence was subsequently searched by SIS investigators. Through the use of various investigative techniques, including vehicle trackers, video and physical surveillance, the investigative team had learned that BROWN had used this location as his principal residence since approximately January 2023. BROWN's significant other was also in the Master Bedroom. Two additional individuals, in their late sixties and seventies, and believed to be relatives of BROWN were also encountered in the apartment.

141.    During a search of the top drawer of the tall dresser in the corner of the Master Bedroom, investigators discovered one knotted, plastic sandwich bag containing approximately 102.7 grams of cocaine base, and approximately $14,000 in United States currency. The cocaine base recovered from the top drawer of the tall dresser in the corner of the master bedroom was field tested and returned a positive result for the presence of cocaine.

142.    During a search of the floor of the Master Bedroom, next to the bed in which BROWN had been apparently sleeping, investigators discovered one knotted, plastic sandwich bag containing approximately 36.5 grams of cocaine located within a black-colored bag, akin to a large wallet. BROWN's NYS ID card and credit cards in BROWN's name were also recovered within this black bag. During a search of the pockets of gray-colored sweatpants located on the floor of the Master Bedroom near the aforementioned black bag, investigators located approximately $954 in U.S. currency wrapped in a rubber band. The cocaine base recovered from the Master Bedroom was field tested and returned a positive result for the presence of cocaine. In total, approximately $15,162 in U.S. currency was recovered from the Master Bedroom.

143.    During a search of the clothes drawer located near the bed in the master bedroom, investigators discovered various mail items, paperwork, and prescription pill bottles, all bearing

BROWN's name.

144.    During a search of the guest bedroom, investigators discovered various drug paraphernalia, including a digital scale. A large quantity of orange-tinted plastic vials were found in a backpack, near the kitchen island, on the floor. BROWN was subsequently detained and transported to the Public Safety Building in Rochester, New York.

## 55 MURRAY STREET

145.    On or about June 22, 2023, at approximately 7:00 a.m., the RPD Special Weapons and Tactics (SWAT) team and HSI special agents executed the warrant for 55 Murray Street.  As RPD SWAT members approached the front of the location, SWAT team members observed an individual later identified as Keyon ARNOLD[2] running out of the back door of the house wearing a red-colored hooded sweatshirt, black-colored pants, and white-colored shoes. After a brief foot pursuit with RPD officers, ARNOLD was apprehended and detained. During a search of ARNOLD's person, RPD officers discovered approximately $295 in United States currency. After the location was secured, law enforcement conducted a thorough search of 55 Murray Street.

146.    During a search of the first floor living room, law enforcement recovered numerous items of evidentiary value. On the couch in the living room, investigators discovered in plain view, three plastic, open-topped, storage baskets that contained approximately 27 grams of fentanyl, inclusive of packaging, approximately 30 grams of powder cocaine, inclusive of package, and approximately 6 grams of cocaine base, inclusive of packaging. The fentanyl was packaged in bundled wax envelopes, totaling approximately one hundred and thirty (130) individual wax envelopes containing fentanyl. There were approximately forty-four (44) pop top vials of cocaine. In plain view, directly next to the narcotics on the same couch was a Glock 19 9mm pistol, bearing

---

[2] Arnold is charged via separate criminal complaint (23-MJ-586) with violations of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 924(c)(1)(A)(i).

serial number FXM482, loaded with one 9-millimeter round in the chamber and a 30-round extended magazine containing approximately 21 rounds of 9mm ammunition. Law enforcement also found a plastic bag on the couch, next to the narcotics and firearm containing approximately $1,741 in United States currency. On the same couch, law enforcement located a bookbag containing seven loose rounds of 9mm ammunition and ARNOLD's New York State Identification Card. The fentanyl recovered from the first floor living room couch was field tested and returned a positive result for the presence of fentanyl. The cocaine recovered from the first floor living room couch was field tested and returned a positive result for the presence of cocaine. The cocaine base recovered from the first floor living room couch was field tested and returned a positive result for the presence of cocaine.

147.    In the same room as the couch described above, law enforcement located a number of items of evidentiary value, on a living room table. On the living room table, investigators discovered another firearm, a Glock 30S .45 caliber pistol bearing serial number BEDU575, loaded with one round of .45 caliber ammunition in the chamber and a 30-round magazine containing approximately 22 rounds of .45 caliber ammunition. This firearm was also equipped with a switch, which I have been advised by members of the Bureau of Alcohol, Tobacco, Firearms and Explosives, allows the pistol to fire rounds fully automatic. During the search of the first floor living room table, investigators also discovered various drug paraphernalia including plastic blue, orange, and clear-colored plastic vials, a plate coated in a white, powdery residue, cutting agent, a digital scale, and empty wax paper decks commonly used to package narcotics. Drug packaging paraphernalia was also found in other parts of 55 Murray Street, including a large number of new and unused plastic vials. These plastic vials included many that were very similar to the orange plastic vials found at the residence of Namon BROWN 280 E. Broad Street, Apartment 901.

148.    Through the course of the investigation, investigators discovered Instagram pictures that it appears ARNOLD posted to his account, at approximately 1:15 a.m. on June 22, 2023. The pictures, posted approximately five hours prior to ARNOLD's arrest, depict ARNOLD wearing the same, red-colored hooded sweatshirt that he was wearing at the time of his arrest. The picture also shows ARNOLD holding what appear to be the same two firearms seized from 55 Murray Street, described above. Also, based on a comparison of the Instagram image to the interior of the 55 Murray Street, it appears ARNOLD was located inside of 55 Murray Street, with his back against a barricaded doorway, at the time the images were taken. The aforementioned photographs are depicted below. ARNOLD is the individual on the left, wearing the red hoodie with dice emblazoned on his chest.



149.    Based on my training and experience, I believe Keyon ARNOLD was a drug dealer employed by BROWN to sell drugs from 55 Murray Street on BROWN's behalf. It should also be noted that during law enforcement's initial approach to 55 Murray Steet, members of the

SWAT team encountered an individual knocking on the door to the premises. This person was detained, advised of their *Miranda* rights, and interviewed. This person, whose identity is known to law enforcement but withheld from this affidavit due to safety concerns, told law enforcement that he/she was attempting to purchase narcotics from the location for personal use, when he/she was interrupted by the police. He/She said that the house was "Big Baby's" drug house and that he/she purchases drugs from this location on a near daily basis. This individual also identified Namon BROWN in a photographic identification procedure as the person he/she knew to be Big Baby.

## 1408 LAKE AVENUE

150.    On June 22, 2023, at approximately 5:00 a.m., members of the investigative team executed a search warrant for 1408 Lake Avenue, Rochester, New York. Over the course of this long-term investigation, this location has been identified as a likely narcotics stash location for Anthony MARTIN. Upon breaching the location, law enforcement made contact with a number of individuals, but MARTIN was not inside. All of these individuals were detained, and once 1408 Lake Avenue was secured, investigators conducted a thorough search of the premises. One (1) Cobray 9mm pistol, one (1) Cobray pistol magazine, and one (1) blue-colored plastic bin containing approximately 2,363.9 grams of cocaine were located on the floor in the back corner of the basement. Approximately 5.7 grams of cocaine and one (1) backpack containing approximately 88 rounds of 9mm ammunition were located in the dining room. One (1) Glock pistol magazine was located in the kitchen. Approximately 45 rounds of .22 caliber long rifle ammunition were located in a dresser drawer which was in the Master Bedroom. Each substance recovered from the premises was later field tested by properly trained members of the investigative team, and each field test returned a positive result for the presence of cocaine.

151.    Additional materials indicative of drug trafficking were also recovered from 1408 Lake Avenue including: one (1) digital scale, commonly used by drug dealers to weigh various quantities of narcotics, including cocaine; baggies, commonly used to package narcotics for individual sale, one (1) cylindrical beaker with noticeable amounts of what appeared to be cocaine residue, and numerous documents in the name of Anthony MARTIN, which were located in a bedroom, evidencing MARTIN's dominion and control over the premises. Based on my training and experience, your Affiant believes the quantity of narcotics and drug paraphernalia discovered at 1408 Lake Avenue is indicative of large-scale narcotics trafficking. Your Affiant further believes the type of firearm and ammunition discovered at 1408 Lake Avenue was used for the protection of the narcotics present at this location. Your Affiant is aware that drug traffickers will keep firearms in the same location as narcotics to protect themselves, their drugs and drug sale proceeds, given the inherently dangerous nature of drug trafficking.

## 1 ANTOINETTE DRIVE, APARTMENT 1

152.    On June 22, 2023, at approximately 8:30 a.m., members of the investigative team executed a search warrant for Antoinette Drive Apartment 1, Rochester, New York. Over the course of this long-term investigation, this location had been identified as a likely stash location for Anthony MARTIN.  Upon breaching the premises, law enforcement made contact with a one (1) individual, who is an elderly relative of MARTIN. Once the location was secured, investigators conducted a thorough search of the premises. Approximately $40,000 in U.S. currency was located in the closet of the Master Bedroom. Additionally, numerous documents bearing Anthony MARTIN's name were also recovered throughout the premises bedroom evidencing MARTIN's dominion and control over the premises. Based on the amount of U.S. currency discovered in the master bedroom closet of 1 Antoinette Drive, Apartment 1, your Affiant believes that such a large quantity of bulk currency is consistent with large-scale narcotics

distribution. Your Affiant is aware that drug traffickers consistently keep large amounts of bulk U.S. currency in safe, secure locations so as keep it concealed from law enforcement and/or theft.

## 548 WINTERGREEN WAY

153.    On June 22, 2023, at approximately 5:00 a.m., members of the investigative team executed a search warrant for 548 Wintergreen Way, Brighton, New York. Over the course of this long-term investigation, this location has been identified as a likely bulk U.S. currency stash location and primary residence of Anthony MARTIN. Upon breaching the location, law enforcement made contact with MARTIN and a female, who were both situated on the living room couch. Both MARTIN and the female were detained without incident and once 548 Wintergreen Way was secured, a thorough search was conducted. Approximately $13,000 in U.S. currency was located in a Gucci cloth bag concealed under the living room ottoman. Approximately $242 in U.S. currency was located in plain view on the kitchen table. One (1) United States Passport and one (1) New York State driver's license, both bearing Anthony MARTIN's name, were discovered in the kitchen evidencing MARTIN's dominion and control over the premises. Based on my training and experience, your Affiant believes the large amount of U.S. currency recovered from MARTIN's residence, specifically the $13,000 concealed under the living room ottoman is indicative of large-scale narcotics trafficking. Your Affiant is aware that drug traffickers commonly attempt to conceal the profits of their illicit drug businesses for the purpose of evading law enforcement.

## 185 JOSEPH AVENUE

154.    On June 22, 2023, at approximately 5:00 a.m., members of the investigative team executed a search warrant for 185 Joseph Avenue, Rochester, New York. Over the course of this long-term investigation, this location has been identified as a narcotics stash location for Jose ENCARNACION and J.O. This location is also the primary residence of J.O. Upon breaching

the location, law enforcement made contact with J.O. at the top of the stairs leading to the second floor. Once 185 Joseph Avenue was secured, investigators conducted a thorough search of the premises. Two (2) kilogram pressing machines containing a white, powdery residue, commonly used by drug dealers to package kilogram-sized quantities of narcotics were seized from under the kitchen sink. Additionally, one (1) grinder, one (1) digital scale, and baggies, commonly used to weigh and package narcotics for individual sale, were discovered underneath the sink in the kitchen. A sample of the white, powdery residue recovered from the kilogram pressing machines was later field tested by properly trained members of the investigative team and returned a positive result for the presence of cocaine.

155.    Upstairs, one (1) Taurus 9mm pistol with what appeared to be a fully automatic switch, an extended magazine containing approximately (29) 9mm rounds, and approximately 0.2 grams of powder fentanyl were discovered in the guest bedroom. Based on my training and experience, your Affiant believes the two (2) kilogram presses, the digital scale, and the packaging material are indicative of large-scale narcotics trafficking. Furthermore, your Affiant believes the type of firearm and ammunition recovered from 185 Joseph Avenue was used for the protection of the narcotics being packaged at this location. Your Affiant is aware that drug traffickers will keep firearms in the same location as narcotics to protect themselves, their drugs and drug sale proceeds, given the inherently dangerous nature of drug trafficking..

## 91 BLOSS STREET

156.    On June 22, 2023, at approximately 5:00 a.m., members of the investigative team executed a search warrant for 91 Bloss Street, Rochester, New York. Over the course of this long-term investigation, this location appeared to have been used by JOSE ENCARNACION and PEDRO MARTINEZ in furtherance of their drug trafficking activities, including meeting with Namon BROWN and Anthony MARTIN. Upon breaching the location, law enforcement made

contact with two (2) individuals, neither of which were ENCARNACION or MARTINEZ. The two (2) individuals were detained and once 91 Bloss Street was secured, investigators conducted a thorough search of the premises.

157.    One (1) United States Postal Service (USPS) shipping box containing opened kilogram-style wrapping, and bubble wrap were located under the bed of the master bedroom. Also located in the large dresser drawer of the master bedroom was a wallet containing a social security card and several credit and debit cards bearing Jose ENCARNACION's name, evidencing ENCARNACION's dominion and control over the premises. One (1) vacuum sealing machine, one (1) digital scale, several black-colored packaging bags, cutting agent, and multiple multi-colored rubber bands were located in a black-colored bag in the Master Bedroom closet. Two (2) digital scales were located together on top of the kitchen cabinets beneath the kitchen ceiling. Based on my training and experience, your Affiant believes the vacuum sealing machine, the cutting agent, and packaging materials located in the Master Bedroom closet accompanied by the empty USPS box containing kilogram-style wrapping materials located under the master bedroom bed are indicative of large-scale narcotics distribution. Your Affiant is aware that drug traffickers will often receive kilogram-sized quantities through the USPS. Once the narcotics are received, drug traffickers will then break down, or "cut", their product for the purpose of increasing their profits through street-level sales.

## 25 RAVINE AVENUE APRTMENT 305

158.    On June 22, 2023, at approximately 1:35 P.M., members of the investigative team executed a search warrant for 25 Ravine Avenue Apartment 305, Rochester, New York. Over the course of this investigation, this location has been identified as a narcotics stash house for Adam BOWEN. However, there was no one inside of the house when officers executed the warrant. Once 25 Ravine Avenue Apartment 305 was secured, investigators conducted a thorough search

of the premises. Approximately 283.5 grams of cocaine base, three (3) digital scales, and numerous new and unused baggies were located in the corner of the living room. A sample of the cocaine base recovered from this location was later field tested by properly trained members of the investigative team and returned a positive result for the presence of cocaine. Two (2) glass beakers were located in the kitchen cupboard. Based on the large amount of cocaine base recovered from the premises, and the drug paraphernalia, such as digital scales, glass beakers, and packaging materials recovered from the premises, your Affiant believes that the presence of all of these items is indicative of narcotics trafficking.

## 103 THOMPSON ROAD

159.    On June 22, 2023, at approximately 6:02 a.m., members of the investigative team executed a search warrant for 103 Thompson Road, Henrietta, New York. Over the course of this investigation, this location has been identified as a possible narcotics stash house and primary residence for Pedro MARTINEZ. Upon breaching the location, law enforcement made contact with a number of individuals. Everyone in the residence was detained for safety precautions. Once 103 Thompson Road was secured, law enforcement conducted a thorough search of the premises. Six (6) Remington 20-gauge shotgun cartridges and a New York State W-2 tax form bearing MARTINEZ's name were located in a nightstand next to the bed in the master bedroom. One (1) Mec-Gar 9mm 13-round pistol magazine was located in the dresser drawer of the master bedroom.

160.    MARTINEZ was not at the location at the time the warrant was executed, as he had left the house early that morning (at approximately 4:10 a.m.) to go to work, in the area of 1150 Lee Road. Law enforcement anticipated this and surveilled MARTINEZ as he traveled from 103 Thompson Road to 1150 Lee Road. It was not feasible to execute the search warrant for 103 Thompson Road prior to MARTINEZ leaving for work as it would likely have tipped off

other members of the conspiracy that law enforcement was conducting an investigation. MARTINEZ drove to work in a 2007 Toyota Camry bearing NY registration KKM1581, and registered to Pedro MARTINEZ.

### 2007 TOYOTA CAMRY BEARING LICENSE PLATE KKM1581

161.    On June 22, 2023, at approximately 1:30 p.m., members of the investigative team executed a search warrant for a 2007 Toyota Camry sedan bearing New York license plate number KKM 1581 and registered to Pedro MARTINEZ. MARTINEZ was followed by law enforcement as he drove this Camry from 103 Thompson Road to 1150 Lee Road, Rochester, New York. MARTINEZ drove directly from Thompson Road to Lee Road without stopping at any other locations. At approximately 6:04 a.m., MARTINEZ was arrested by investigative team members at 1150 Lee Road without incident. MARTINEZ's 2007 Toyota Camry was subsequently towed to the Rochester Police Department's (RPD) impound lot located at 330 Colfax Street where a search warrant was executed. At approximately 1:30 p.m., investigative team members executed the search warrant for the 2007 Toyota Camry. One (1) zip lock bag containing approximately 1,050 grams of cocaine, wrapped in plastic and tin foil, was located in the trunk of the vehicle. A sample of the cocaine recovered from this vehicle was later field tested by properly trained members of the investigative team and returned a positive result for the presence of cocaine. Based on my training and experience, your Affiant believes the large quantity of cocaine located in MARTINEZ's vehicle is indicative of large-scale narcotics distribution.

### INTERVIEWS

### INTERVIEW OF ANTHONY MARTIN

162.    After being taken into custody, MARTIN was transported to RPD's Public Safety Building where he was placed in an interview room. The defendant was advised of his *Miranda*

rights, which he voluntarily waived. The defendant was then interviewed in connection with the drug trafficking activities described throughout this Affidavit. In summary the defendant admitted to being engaged the trafficking of cocaine. He admitted that 1408 Lake Avenue is his grandmother's home and that he stores cocaine there. He told investigators that there were bags containing about a kilogram of cocaine in a bin or a cup in the basement of 1408 Lake Avenue, all of which belonged to him.

## INTERVIEW OF PEDRO MARTINEZ

163.    After being taken into custody, MARTINEZ was transported to RPD's Public Safety Building where he was placed in an interview room. The defendant was advised of his *Miranda* rights, which he voluntarily waived. The defendant was then interviewed in connection with the drug trafficking activities described throughout this Affidavit. MARTINEZ acknowledged he is on probation for drug conspiracy and that he understood what was going on. MARTINEZ admitted his girlfriend has a black and white-colored Explorer and he acknowledged he had driven the vehicle over to Bloss Street. MARTINEZ admitted he was just doing somebody a favor that day because he was already heading over to Bloss Street. MARTINEZ admitted the package he had was in a bag, but he didn't know what it was. MARTINEZ acknowledged he was charged with selling five to fifteen kilos of cocaine and three to five kilos of heroin years ago.

## INTERVIEW OF DELARAE SHEFFIELD

164.    On June 23, 2023, law enforcement executed several search warrants in Auburn, New York, including 11 Chapman Street.  SHEFFIELD was taken into custody and was brought to the Auburn Police Department. SHEFFIELD was advised of her *Miranda* warnings, which she waived, and agreed to speak with law enforcement. SHEFFIELD admitted that she had been selling crack or cocaine base in Auburn, while residing at 11 Chapman Street. She admitted to engaging in this behavior for approximately four months, all of which fell within the specified time frame of the BROWN DTO conspiracy.

## INTERVIEW OF ADAM BOWEN

165.    After being taken into custody, BOWEN was transported to RPD's Public Safety Building where he was placed in an interview room. The defendant was advised of his *Miranda* rights, which he voluntarily waived. The defendant was then interviewed in connection with the drug trafficking activities described throughout this Affidavit. BOWEN admitted that he possessed drugs at 25 Ravine Avenue, Apartment 305, and was involved in the distribution of large amounts of cocaine. BOWEN said he would go to 25 Ravine Avenue, Apartment 305, to "cook up" cocaine and that he anticipated obtaining additional cocaine on the day of his arrest. BOWEN made admissions as to his day to day drug trafficking activities. BOWEN admitted, in sum and substance, to having worked in concert with other identified members of the BROWN DTO to distribute cocaine and cocaine base.

## CONCLUSION

166.    Based on the foregoing information, your affiant submits that probable cause exists to believe that on or about and between the month of October 2022 and June 22, 2023, in

the Western District of New York and elsewhere, the defendants, Namon BROWN a/k/a Bo

a/k/a Big Baby, Anthony MARTIN a/k/a Dut, Jose ENCARNACION a/k/a Papi, Pedro

MARTINEZ, Adam BOWEN, Delarae SHEFFIELD a/k/a Del, and Aaniyah CARTER

a/k/a Vee, committed violations of Title 21, United States Code, Section 846 (conspiracy to

possess, with intent to distribute, and to distribute, 500 grams or more of cocaine, a Schedule

II controlled substance; and fentanyl, a Schedule II controlled substance).


MATTHEW D. HUDSON
Special Agent
Homeland Security Investigations


Affidavit and Criminal Complaint submitted electronically
by email in .pdf format. Oath administered, and contents
and signature attested to me and before me as true and accurate
telephonically pursuant to Fed.R.Crim.P. 4.1 and 4(d)
on July ___17___, 2023.


HONORABLE MARIAN W. PAYSON
United States Magistrate Judge
Western District of New York